PRESENT: Carrico, C.J., Lacy, Hassell, Koontz, Kinser, and
Lemons, JJ., and Stephenson, S.J.

DAVID R. TANNER, JAMES C. PERRY,
AND BRIAN W. KREIDER
                                        OPINION BY
v.  Record Nos. 020938, 020939,
        and 020940      SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
STATE CORPORATION COMMISSION            January 10, 2003


                FROM THE STATE CORPORATION COMMISSION

        In these three consolidated appeals of right, we determine

whether the State Corporation Commission (the Commission) erred

in finding that the appellants violated certain sections of the

Virginia Securities Act, Code § 13.1-501 et seq. (the Act).  The

underlying issue presented is whether various instruments sold

by the appellants were securities, as defined by the Act, that

were required to be registered with the Commission.

                                I

        David R. Tanner, James C. Perry, and Brian W. Kreider

(collectively, the Defendants) were ordered to appear before the

Commission to show cause why they jointly or severally should

not be penalized pursuant to Code § 13.1-521 and permanently

enjoined pursuant to Code § 13.1-519 for their alleged

violations of the Act.  Following a hearing, the Commission's

hearing examiner issued a report recommending to the Commission

the following:

1. That Tanner be penalized the sum of $1,000 for one violation of Code § 13.1-504(A) (failure to register as a securities agent); the sum of $11,000 for 22 violations ($500 per violation) of Code § 13.1-507 (sale of unregistered securities); the sum of $1,000 for one violation of Code § 13.1-502(2) (securities fraud); and that he be permanently enjoined from transacting the business of a securities agent in the Commonwealth.

2. That Perry be penalized the sum of $1,000 for one violation of Code § 13.1-504(A); the sum of $9,000 for 18 violations ($500 per violation) of Code § 13.1-507; the sum of $1,000 for one violation of Code § 13.1-502(2); and that he be permanently enjoined from transacting the business of a securities agent in the Commonwealth.

3. That Kreider be penalized the sum of $1,000 for one violation of Code § 13.1-504(A); the sum of $11,000 for 22 violations ($500 per violation) of Code § 13.1-507; and that he be permanently enjoined from selling unregistered securities in the Commonwealth.

The Commission adopted the hearing examiner's recommendations in separate judgment orders entered against the Defendants on December 21, 2001. These appeals ensued.

II

The evidence established that the Defendants acted as selling agents for an organization known as The Charterhouse Group, Ltd. (Charterhouse). Charterhouse, acting through the Defendants and other agents, sought to sell U.S. Capital Funding, Inc. Corporate Funding Notes (U.S. Capital Notes), Granite Financial Holding Corporation Corporate Funding Notes (Granite Financial Notes), Kennsington Holding Corporation Account Receivable Purchase and Sales Agreements (Kennsington Account Receivable Agreements), Postal Flyers Inc.com Promissory Notes (Postal Flyers Notes), and Postmistress General, Inc. Promissory Notes (Postmistress General Notes). None of these instruments were registered as securities pursuant to the Act.

Tanner sold 18 U.S. Capital Notes, one Granite Financial Note, and three Kennsington Account Receivable Agreements. He was not licensed as a securities agent for Charterhouse.

Perry sold 16 U.S. Capital Notes, one Granite Financial Note, and one Kennsington Account Receivable Agreement. He was not licensed as a securities agent for Charterhouse.

Kreider sold ten U.S. Capital Notes, six Kennsington Account Receivable Agreements, two Postal Flyers Notes, and four Postmistress General Notes. Although he was licensed as a securities agent, he was not licensed as a securities agent for Charterhouse.

III

3

It is firmly established that, "[o]n appeal, the findings
of the Commission are presumed to be just, reasonable, and
correct."  Swiss Re Life Company America v. Gross, 253 Va. 139,
144, 479 S.E.2d 857, 860 (1997); Bralley-Willett v. Holtzman
Oil, 216 Va. 888, 890, 223 S.E.2d 892, 895 (1976).  The
Commission's decisions are accorded the respect due "a tribunal
informed by experience, and its decision will not be disturbed
when 'based upon the application of correct principles of
law.' "  Lawyers Title Insurance Corp. v. Norwest Corp., 254 Va.
388, 390-91, 493 S.E.2d 114, 115 (1997) (quoting Gross, 253 Va.
at 144, 479 S.E.2d at 860).  We will reverse a Commission's
decision, however, if it is based upon a mistake of law.  Lake
Monticello Service Co. v. Board of Supr's, 237 Va. 434, 438, 377
S.E.2d 446, 448 (1989).

IV

We first consider the corporate funding notes issued by
U.S. Capital Funding, Inc. and Granite Financial Holding
Corporation.  All of these notes had a maturity of less than six
months.

The Defendants concede that these notes are securities as
defined by Code § 13.1-501.[1]  They contend, however, that the

---

[1] Code § 13.1-501 defines a security as

any note; stock; treasury stock; bond; debenture;
evidence of indebtedness; certificate of interest or

4

notes are exempt from registration pursuant to Code § 13.1-514,

which provides, in pertinent part, as follows:

> A. The following securities are exempted from the securities registration requirements of this chapter:
>
> . . . .
>
> 9. Any commercial paper which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which evidences an obligation to pay cash within nine months after the date of issuance, exclusive of days of grace, or any renewal thereof which is likewise limited, or any guaranty of such paper or of any such renewal.

The Defendants assert that, because these notes mature in less

than nine months, they qualify as exempt "commercial paper"

under Code § 13.1-514(A)(9).

---

> participation in any profit-sharing agreement; collateral trust certificate; preorganization certificate of subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; oil, gas or other mineral lease, right or royalty, or any interest therein; or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. However, this definition shall not apply to any insurance policy, endowment policy, annuity contract, variable annuity contract or any contract or agreement in relation to and in consequence of any such policy or contract, issued by an insurance company subject to the supervision or control of the Commission's Bureau of Insurance when the form of such policy or contract has been duly filed with the Bureau as now or hereafter required by law.

As the Commission points out, however, the notes' maturity period is not the sole criterion for determining whether they are exempt commercial paper under Code § 13.1-514(A)(9). The Commission's securities rules have incorporated the federal criteria for commercial paper as follows:

> Commercial paper as referred to under § 13.1-514 A 9 of the Act, shall be considered as any note, draft, bill of exchange, or banker's acceptance which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof, the maturity of which is likewise limited. <u>Commercial paper shall also exemplify the following characteristics: prime quality negotiable paper of a type not ordinarily purchased by the general public</u>, issued to facilitate well recognized types of current operational business requirements, and of a type eligible for discounting by Federal Reserve Banks.

21 VAC 5-40-10 (emphasis added).

The Defendants produced no evidence that the notes exemplified the characteristics set forth in 21 VAC 5-40-10. Indeed, the hearing examiner concluded that the notes failed to meet two requirements necessary in order to qualify as commercial paper; first, the notes "were not prime quality negotiable paper," and, second, the notes "were sold to the general public."

The Defendants bore the burden of proving that the notes were exempted from registration. Code § 13.1-514(C). They failed to meet that burden, and, therefore, we hold that the

6

Commission did not err in ruling that these notes were not eligible for exemption from registration.[2]

                                    V

We next consider whether the instruments issued by Kennsington Holding Corporation (Kennsington) and sold by the Defendants are securities under the Act. Each instrument is entitled "Account Receivable Purchase and Sales Agreement" (collectively, the Agreements).

The Agreements provide that Kennsington "sells, sets over and assigns" to the purchasers certain accounts receivable and that the purchasers "shall be the absolute owner[s] of the accounts." Additionally, Kennsington agreed to deliver to the purchasers "a detailed listing of all of the accounts [and] the work folder for each account, as available, containing all supporting documents." The Agreements also provide that the purchasers have "the right to assign the collection of the Accounts Receivable . . . to the Collection Company of their choice."

Code § 13.1-501 defines a "security" to include an "investment contract." In Securities and Exchange Com'n v. W.J. Howey Co., 328 U.S. 293, 298-99 (1946), the Supreme Court ruled

---

[2] On appeal, the Defendants challenge the validity of the Commission's securities rules. This issue was not raised before the Commission; therefore, we will not consider it for the first time on appeal. Rule 5:21(i).

that "an investment contract for purposes of the Securities Act [of 1933] means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."

Relying upon W.J. Howey Co., the Commission contends that the purchasers of these Agreements were led to expect profits only from the efforts of others. The Commission asserts that the purchasers "had no ability to manage or control the investment[s]." We do not think the record supports the Commission's contention.

The sole evidence relating to the operation of the Agreements was the testimony of Harold J. Bailey, who had purchased accounts receivable owed to an entity called "The Legal Society." Bailey received a UCC-1 financing statement related to his purchase that showed the legal name of the debtor. He was furnished an information packet, including an explanation of "how the entire system [of accounts receivable financing] works." Although Bailey, by a separate agreement, engaged Summit Financial Services to be his collection agent, nothing in the record suggests that Bailey was not free to proceed directly against The Legal Society to collect the accounts receivable.

We conclude that the Agreements are not investment contracts under the Howey test. Clearly, the purchasers received title to the accounts receivable and retained control over their collection. The purchasers did not have to rely upon the efforts of others to obtain a return on their investments. Thus, we hold that the Commission erred in finding that the Agreements were unregistered securities.

VI

We now determine whether the Commission erred in ruling that the Postmistress General and Postal Flyers Notes were not exempt from registration under the Act. Kreider contends that the notes were exempt because they were "covered securities" under federal law.

Code § 13.1-507(iii) specifically exempts from registration a "federal covered security." A "federal covered security" is defined in Code § 13.1-501 as "any security described as a 'covered security' in § 18 of the Securities Act of 1933." In pertinent part, 15 U.S.C. § 77r(b)(4)(2000), which codified § 18, provides the following:

> A security is a covered security with respect to a transaction that is exempt from registration under this subchapter pursuant to –
>
> . . . .
>
> (D) [Securities and Exchange] Commission rules or regulations issued under section 77d(2) of this title, except that this subparagraph does

9

> not prohibit a State from imposing notice filing
> requirements that are substantially similar to
> those required by rule or regulation under
> section 77d(2) of this title that are in effect
> on September 1, 1996.

An investigator with the Commission's staff requested material and information from the issuer of the notes. As part of its response, the issuer's attorney, by letter introduced into evidence by the Commission, stated that the notes were issued pursuant to a Rule 504 Regulation D filing with the Securities and Exchange Commission. This was the sole evidence regarding the rule governing the issuance of the notes.

Kreider contends that securities issued pursuant to Rule 504 Regulation D are covered securities as defined by § 18 of the Securities Act of 1933 and, therefore, exempt from registration under the Act. The Commission, on the other hand, contends that only Rule 506 Regulation D securities are covered securities exempt from registration under the Act. We do not agree with the Commission.

Rule 504 Regulation D was issued under the authority of 15 U.S.C. § 77d(2) (2000). The rule allows an issuer to sell a limited amount of securities in any twelve-month period to any number of purchasers with no requirement for registration. 17 C.F.R. § 230.504 (2002). It follows, therefore, that, because Rule 504 was issued pursuant to the authority of 15 U.S.C.

§ 77d(2), securities issued under Rule 504 are "covered securities" exempt from registration under the Act.

The hearing examiner found that the issuer of the notes "failed to file for an exemption pursuant to 21 VAC 5-40-120. Consequently, [Kreider] sold securities that were neither registered nor exempted by the Act."  It is true that 21 VAC 5-40-120 provides that "[a]n issuer offering a security that is a covered security under § 18(b)(4)(D) of the Securities Act of 1933" is required to file a notice with the Commission and pay a fee.  These requirements, however, only apply to "[o]fferings conducted pursuant to Rule 506 of federal Regulation D (17 CFR 230.506)."  As previously stated, the notes in question were issued pursuant to Rule 504 Regulation D, and there is no requirement under 21 VAC 5-40-120 for an issuer of securities issued pursuant to Rule 504 to do anything.  We hold, therefore, that the Commission erred in ruling that the notes were not exempt from registration under the Act.

VII

Finally, we consider an issue that we have not previously decided.  Tanner and Perry contend that the Commission erred in finding that they violated Code § 13.1-502(2) because there was no evidence of scienter presented at the hearing.[3]

---

[3] Tanner and Perry also contend that scienter was required to prove that they violated Code § 13.1-507.  However, they did

11

Code § 13.1-502 states, in pertinent part, the following:

It shall be unlawful for any person in the offer or sale of any securities, directly or indirectly,

. . . .

(2) To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading[.]

In Aaron v. Securities and Exchange Commission, 446 U.S. 680 (1980), the Supreme Court considered whether scienter was required for violations of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).  Section 17(a), which is nearly identical to Code § 13.1-502, provides, in pertinent part, as follows:

It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly –

. . . .

(2)  to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading[.]

The Supreme Court held that scienter was not required for violations of § 17(a)(2), stating that the language of the

not raise this issue before the Commission, and, therefore, we will not consider it on appeal.  Rule 5:21(i).

12

statute is "devoid of any suggestion whatsoever of a scienter requirement."  446 U.S. at 696.

We will apply the Aaron standard to Code § 13.1-502(2) and hold that scienter is not required to prove its violation. Therefore, the Commission did not err in so ruling.

                                    VIII

In sum, we will affirm the Commission's judgments as they relate to the corporate funding notes issued by U.S. Capital Funding, Inc. and Granite Financial Holding Corporation and with respect to the violations of Code § 13.1-502(2).  We will reverse the judgments as they relate to the Kennsington Account Receivable Agreements and as to the Postmistress General and Postal Flyers Notes.  We will remand the case to the Commission for reconsideration of penalties in the light of our holdings as expressed in this opinion.[4]

                                    Affirmed in part,
                                    reversed in part,
                                    and remanded.

---

[4] Because the case will be remanded for reconsideration of penalties, we express no opinion regarding the Defendants' claim that the penalties are excessive.