PRESENT:  Hassell, C.J., Lacy, Koontz, Kinser, and Lemons, JJ.,
and Carrico and Stephenson, S.JJ.

DAVID R. TANNER, JAMES C. PERRY,
AND BRIAN W. KREIDER

v.  Record Nos. 020938, 020939,            OPINION BY
           and 020940     SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                        June 6, 2003
STATE CORPORATION COMMISSION

        UPON REHEARING FROM THE STATE CORPORATION COMMISSION


      On January 10, 2003, we rendered an opinion in these

consolidated appeals in which we determined whether the State

Corporation Commission (the Commission) erred in finding that

David R. Tanner, James C. Perry, and Brian W. Kreider violated

certain sections of the Virginia Securities Act, Code § 13.1-501

et seq. (the Act).  We affirmed, in part, and reversed, in part,

the Commission's judgments and remanded the case to the

Commission for further consideration of penalties.  Tanner v.

State Corporation Commission, 265 Va. 148, 574 S.E.2d 525

(2003).

      Thereafter, the Commission, pursuant to Code § 8.01-675.2

and Rule 5:39, petitioned this Court for a rehearing to

reconsider and withdraw the portions of the opinion that

reversed its judgments.  By order entered February 28, 2003, we

granted the petition as it relates to Parts V and VI of the

opinion.

I

In Part V of the opinion in Tanner, we considered whether certain instruments entitled "Accounts Receivable Purchase and Sales Agreement" (the Agreements) issued by Kennsington Holding Corporation (Kennsington) and sold by Tanner, Perry, and Kreider are investment contracts as defined in Securities and Exchange Com'n v. W.J. Howey Co., 328 U.S. 293 (1946), and, therefore, securities subject to the registration requirements of the Act. The Commission contends that, in deciding that the Agreements are not securities, we based our decision on a mistake of fact.

The Act defines a "security" to include an "investment contract." Code § 13.1-501. In W.J. Howey Co., the Supreme Court ruled that "an investment contract for purposes of the Securities Act [of 1933] means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or third party." 328 U.S. at 298-99.

In Tanner, we rejected the Commission's contention that the purchasers of the Agreements were led to expect profits solely from the efforts of others. 265 Va. at 155, 574 S.E.2d at 529. We noted that, under the terms of the Agreements, Kennsington "sells, sets over and assigns" to the purchasers certain accounts receivable; that the purchasers "shall be the absolute owner[s] of the accounts;" that Kennsington agreed to deliver to the purchasers "a detailed listing of all of the accounts [and]

2

the work folder for each account, as available, containing all supporting documents;" and that the purchasers have "the right to assign the collection of the Accounts Receivable . . . to the Collection Company of their choice." Id. at 154, 574 S.E.2d at 528.

With respect to the operation of the Agreements, we said the following:

> The sole evidence relating to the operation of the Agreements was the testimony of Harold J. Bailey, who had purchased accounts receivable owed to an entity called "The Legal Society." Bailey received a UCC-1 financing statement related to his purchase that showed the legal name of the debtor. He was furnished an information packet, including an explanation of "how the entire system [of accounts receivable financing] works." Although Bailey, by a separate agreement, engaged Summit Financial Services to be his collection agent, nothing in the record suggests that Bailey was not free to proceed directly against The Legal Society to collect the accounts receivable.

Id. at 155, 574 S.E.2d at 528-29.

Upon rehearing, the Commission contends that we mistakenly "relied on the fact that . . . Bailey had received a UCC-1 financing statement related to his investment." The Commission so contends notwithstanding that Bailey testified that he "got a financing statement." Further, the record contains the information packet furnished to Bailey informing him that, "[o]nce the receivables have been verified, Kennsington then files a UCC-1 on them in the name of the client." (Emphasis added.)

3

Nonetheless, the Commission, in an attempt to vitiate this evidence in the record, attached to its petition for rehearing a copy of an alleged letter from Kennsington to Bailey.[1]  This document is not a part of the record, and we will not consider it.  Upon rehearing, as with original appeals, we consider and make decisions based upon the record that has been brought to us.  Accordingly, we reaffirm our decision in Part V of the opinion in Tanner.

II

In Part VI of the opinion in Tanner, we considered whether certain promissory notes, which were issued pursuant to Rule 504 Regulation D, are exempt from registration under the Act.  The Commission contends that our ruling that the notes are exempt from registration was based upon a mistake of law.  We agree.

We erred in concluding that Rule 504 Regulation D was issued under the authority of § 4(2) of the Securities Act of 1933 (the Securities Act), 15 U.S.C. § 77d(2) (2000).  Based upon this erroneous conclusion, we held that the notes were exempt from the Act's  registration requirements pursuant to § 18(b)(4) of the Securities Act, 15 U.S.C. § 77r(b)(4).

_____

[1] In this letter, Kennsington purportedly informed Bailey that "a UCC-1 has been filed in the name of Kennsington." Therefore, according to the Commission, "the investors had to depend entirely upon Kennsington" to collect on their investments.

We are persuaded now that Rule 504 Regulation D was issued under the authority of § 3(b) of the Securities Act, 15 U.S.C. § 77c(b). [2]  Indeed, the Rule itself references § 3(b), and the adopting release for Regulation D states that Rule 504 "provides an exemption under section 3(b) of the Securities Act." Securities Act Release No. 33-6389, 47 Fed. Reg. 11251  (March 16, 1982).  Further, we are persuaded that § 18(b)(4) of the Securities Act does not preempt state law with respect to transactions exempt from registration pursuant to rules issued under § 3(b).  In other words, securities issued under § 3(b) are not "covered securities" and, therefore, must be registered under Code § 13.1-507. [3]

III

For the reasons stated above, Part VI of the opinion in Tanner will be modified.  The remainder of the opinion will be reaffirmed.

Reaffirmed, as modified.

---

[2] Although the Commission made the argument, in Tanner, that securities issued under Rule 504 are not "covered securities," it did not cite § 3(b) of the Securities Act as authority to support its argument until it filed its petition for rehearing.

[3] The appellants contend that, even if the notes should have been registered, they should not be held accountable due to the complexity of the issue.  While we agree that the issue is complex, especially to a lay person, our function is limited to correctly construing the applicable statutes, rules, and regulations.  It well may be, however, that, when the Commission

reconsiders penalties on remand, it will take into account the appellants' contention.