Filed 12/29/16 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

OPINION ON REHEARING

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| 569 EAST COUNTY BOULEVARD LLC et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BACKCOUNTRY AGAINST THE DUMP, INC., <br><br> Defendant and Appellant. | D068538 <br><br><br> (Super. Ct. No. 37-2014-00025797-CU-MC-CTL) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING (NO CHANGE IN JUDGMENT) |

THE COURT:

It is ordered that the opinion filed herein on December 5, 2015, be modified as follows:

1. On page 3, at the end of footnote 3, after the last line of the paragraph ending with the words "propriety of BAD's current request, we nevertheless grant BAD's request for judicial notice," insert the following language as part of the same paragraph of the footnote:

> The newly lodged First Amended Complaint confirms BAD was a named defendant in only one cause of action. Although BAD was later named in a

paragraph alleging BAD's conduct warranted an award of punitive damages to plaintiff, which paragraph was appended to a different cause of action (in which BAD was not a named defendant) and later incorporated by reference in yet another cause of action (in which BAD was again not a named defendant), this paragraph did *not* state additional causes of action against BAD. In California, it is settled there is no separate cause of action for punitive damages. (*McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1164.) Instead, a claim for punitive damages is merely an additional remedy that is dependent on a viable cause of action for an underlying tort. (*Brewer v. Second Baptist Church of Los Angeles* (1948) 32 Cal.2d 791, 801-802; *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1137.)

2. On page 15, line 5, delete the entire last sentence of the paragraph, beginning with the words "Moreover, noted the trial court," and replace the sentence with the following:

Moreover, noted the trial court, the anti-SLAPP motion by BAD's attorneys was directed at a complaint in which BAD was a named defendant in only a single cause of action, and did *not* involve either novel or complex issues.

3. On page 18, line 5, footnote 16, in the paragraph's second sentence beginning "None of the cases relied on by BAD for this proposition," delete the parenthetical citation to the *Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266 case, so the second sentence reads in full as follows:

None of the cases relied on by BAD for this proposition reversed a fee award based on a failure to determine separate rates for each attorney involved, and other cases have either implicitly approved use of a blended rate (*Cates v. Chiang* (2013) 213 Cal.App.4th 791, 819-820) or have refused to reverse an award premised on use of a blended rate, particularly where, as here, there was evidence that would permit a conclusion a more highly paid senior partner should participate only in higher-level tasks and should delegate more mundane tasks to associates at much lower billable rates.

4. On page 19, at the end of footnote 17, after the parenthetical explanation of the *Rebney v. Wells Fargo Bank* (1991) 232 Cal.App.3d 1344 case at the end of the

paragraph, ending with the words "appellate court must infer all findings on these points in favor of prevailing parties," insert the following language as a second paragraph of the footnote:

> BAD cites, for the first time in its original rehearing petition, two cases which purport to require a more detailed statement of decision when a fee award is substantially reduced: *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44 and *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88. However, we may disregard new authority cited for the first time in a petition for rehearing. (*Bullis Charter School v. Los Altos School Dist.* (2011) 200 Cal.App.4th 1022, 1036, fn. 6.) Moreover, even were we to consider those cases, neither case requires reversal here. In *Gorman,* the court reviewed and reversed an unexplained (*and* apparently inexplicable) reduction in the fee award, which is distinct from the court's award here. Indeed, the *Gorman* court observed that, when confronted by a lengthy fee request, "[a] reduced award might be fully justified by a general observation that an attorney overlitigated a case or submitted a padded bill or that the opposing party has stated valid objections." (*Gorman*, *supra,* at p. 101.) *Kerkeles* is likewise inapposite, because it involved an award of fees under 42 United States Code section 1988, which arguably requires more detailed explanation for a reduced fee award. (*Kerkeles, supra*, at pp. 101-104, citing federal cases and observing "[w]e thus conclude that the reasoning expressed in the court's order *does not meet the federal criterion* of a clear and specific explanation sufficient for meaningful appellate review," italics added.)

> There is no change in the judgment.

> The petition for rehearing is denied.

                                                                          _____
                                                                          AARON, Acting P. J.

Copies to:  All parties

3

Filed 12/5/16; on rehearing (unmodified version)
CERTIFIED FOR PUBLICATION

OPINION ON REHEARING

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| 569 EAST COUNTY BOULEVARD LLC et al., | D068538 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2014-00025797-CU-MC-CTL) |
| BACKCOUNTRY AGAINST THE DUMP, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Law Offices of Stephan C. Volker, Stephan C. Volker, Daniel Garrett-Steinman and Jamey M.B. Volker for Defendant and Appellant.

Mark M. Clairmont and Paul W. Pitingaro for Plaintiffs and Respondents.

Plaintiff 569 East County Boulevard, LLC, and others (plaintiffs) filed an action against numerous entities and individuals.  Plaintiffs' complaint named Backcountry Against the Dump, Inc. (BAD) as a defendant and alleged a single cause of action against BAD for unlawful interference with prospective economic advantage.  BAD moved to

strike the action pursuant to Code of Civil Procedure section 425.16,[1] commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)  After BAD's anti-SLAPP motion was granted, it sought attorney fees and costs in a total amount of $152,529.15 pursuant to section 425.16, subdivision (c)(1).  Plaintiffs did not contest defendant's entitlement to a fees and costs award, but argued the amount sought was exorbitant.  The court found BAD was entitled to attorney fees and costs incurred for the successful anti-SLAPP motion, but awarded a reduced amount of $30,752.86.  BAD appeals from that order, arguing the reduced award was an abuse of discretion.  Upon reconsideration after ordering a rehearing in this matter, we affirm the judgment.[2]

## I

## BACKGROUND

A. The Underlying Action and Anti-SLAPP Motion

Plaintiffs' First Amended Complaint alleged a single cause of action against BAD for unlawful interference with prospective economic advantage.[3]  BAD moved to strike

---

[1]     All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]     After our original opinion was filed in this matter, BAD petitioned for rehearing, asserting it had improperly been denied the opportunity to orally argue this matter before this court.  We granted BAD's petition for rehearing.

[3]     Plaintiffs' complaint alleged numerous claims against entities and individuals other than BAD, which had elected to omit a copy of the operative pleading from the original appellant's appendix.  However, as part of its petition for rehearing, BAD now seeks to

the action under the anti-SLAPP statute, arguing the action sought damages from BAD

caused by BAD's petitioning activity, and plaintiffs could not demonstrate probable

success on the merits.[4]  The court granted the motion to strike plaintiffs' cause of action

against BAD alleging unlawful interference with prospective economic advantage.[5]

---

supplement the record by its current request that we judicially notice plaintiffs' first amended complaint on rehearing.  BAD's current request for judicial notice is unaccompanied by any citation to pertinent authority permitting a party to cure defects in its original record on appeal as part of and in support of its petition for rehearing.  We are unaware of any controlling California authority on this question, although courts in other jurisdictions have rejected similar efforts.  (See, e.g., *Scott v. Peterson* (Okla. 2005) 126 P.3d 1232, 1238, fn. omitted ["On rehearing the Scotts present additional facts in support of their argument. Generally, this Court does not allow a record to be supplemented by the parties on rehearing, and the few exceptions to this rule are not present in this case."]; accord, *Tanner v. State Corp. Comm'n* (Va. 2003) 580 S.E.2d 850, 852-853; *Saldana v. Garcia* (Tex. 1955) 285 S.W.2d 197, 201.)  While we have substantial doubt on the propriety of BAD's current request, we nevertheless grant BAD's request for judicial notice.

[4]     BAD also demurred to other causes of action asserted in the complaint.  However, those other causes of action neither named BAD as a defendant nor were directed at actions taken by BAD.  BAD nevertheless argued below, and claims on appeal, that it was appropriate and necessary to attack those causes of action.  BAD's sole rationale for this argument is that Tisdale was a named defendant in those claims, and the complaint's general allegations included an allegation Tisdale was BAD's president.  However, the complaint *separately* alleged Tisdale occupied a *different* capacity--as President of the Boulevard Planning Group.  Moreover, the *other* causes of action (in which BAD was not named) were directed at numerous public entities and officers, including the County of San Diego, the County of San Diego's board of supervisors, two individuals (one who served as commissioner for the San Diego local agency formation commission and the other who served on the San Diego County planning commission) and Tisdale; the substantive basis for those causes of action was that these individuals and entities violated various constitutional and statutory protections (and committed fraud) in connection with their actions as public officials surrounding a General Plan Update, a 2013 Housing Element Update, and a 2014 General Plan Amendment, and that these actions damaged plaintiffs.  Indeed, BAD's demurrer was largely based on defenses available to Tisdale in her capacity as an elected official (rather than defenses available to her in her other capacities as an private citizen or as an officer of BAD), because the

3

B. <u>The Attorney Fees and Costs Motion</u>

BAD sought attorney fees and costs as the prevailing party, pursuant to section 425.16, subdivision (c)(1), and requested a total amount of $152,529.15. The request was supported by a declaration from BAD's counsel, Mr. S. Volker, arguing the appropriate hourly rate for his time (as lead attorney) was $750 per hour for himself as lead attorney, and the appropriate hourly rate for three fifth-year associates was $350 per hour. He asserted he spent over 170 hours on the merits of the work necessary to the anti-SLAPP motion, and that his associates spent over 40 additional hours on the merits of the work necessary to the anti-SLAPP motion. He also asserted he spent another 9.4 hours on the fee motion itself.

Plaintiffs raised numerous objections to the amount of the request, asserting (1) the hourly rate charged by BAD's attorneys was excessive for the nature of the case, (2) BAD's fee request included billings for work unrelated to the anti-SLAPP motion, or unnecessary, or administrative in nature or duplicative or padded, and (3) BAD's fee request included fees premised on vague time entries or "block-billed" time. For all of

demurrer raised such issues as the statute of limitations under Government Code section 65009, subdivisions (c) and (d), the official and legislative immunities protections enjoyed by elected officials (Gov. Code, §§ 820.9, 822.2), and the bars of the Government Claims Act (Gov. Code, § 905 et seq.) and exhaustion of remedies requirements (Gov. Code, § 91007).

5      That ruling was apparently based on the conclusion BAD had met its threshold burden under the anti-SLAPP statute and thereby shifted to plaintiffs the burden to show likely success on the merits (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965; *Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679), and plaintiffs had not shown any economic relationship had been disrupted.

4

these reasons, plaintiffs argued, the amount of the fee and cost award requested by BAD was unreasonable.

The court first determined the hourly rate sought by BAD's attorneys was "excessive compared to those in the San Diego community" and that "a reasonable hourly rate for equally qualified counsel" was $275 dollars per hour.[6] The court then turned to the question of the reasonable hours expended on the anti-SLAPP motion. After noting it had "culled through the billing statement" submitted by BAD in support of its fee request, the court observed that many of the hours listed in that statement encompassed work "on the demurrer, coordinating with other counsel, work related to the [case management conference], and duplicative time with [cocounsel]." The court also observed that, although BAD's counsel "express[ed] confusion with the pleadings, there was only one cause of action that was the subject of the anti-SLAPP motion and the issues were not especially novel or complex." The court ruled 103.6 hours was a reasonable amount of

---

6    The court premised its hourly rate determination on its earlier determination concerning the reasonable hourly rate for the work performed by the attorney who *separately* represented Ms. Tisdale in her anti-SLAPP motion directed at the same pleadings. The attorney separately representing Ms. Tisdale had 27 years of experience practicing in San Diego and charged $275 per hour, and the court determined there was "no reason to deviate from this determination" for BAD's counsel, who was "equally qualified" as Tisdale's counsel. The court, after granting Tisdale's anti-SLAPP motion, ultimately awarded her counsel $71,485 as reasonable attorney fees. In the same proceeding, the court also considered the proper fee award to the attorneys for numerous other parties to this action (i.e. Endangered Habitat League, Inc., Endangered Habitats Conservancy, Inc., Protect Our Communities Foundation, Inc., and Michael Beck) who occupied a similar position as BAD: plaintiffs asserted a single cause of action against them, and they successfully moved to dismiss that claim under the anti-SLAPP statute. The court awarded attorney fees of less than $30,000 to these defendants.

5

time spent on the anti-SLAPP motion and the fee motion, and awarded $28,290 as reasonable attorney fees.

II

LEGAL FRAMEWORK

BAD asserts the court erred in calculating the fee award in two principal respects. First, BAD argues the court erred when it selected $275 as the reasonable hourly rate to be applied to hours worked in connection with the anti-SLAPP motion. Second, BAD argues it was error to reduce the hours worked in connection with the anti-SLAPP motion below the number of hours it claimed in its fee motion.

A. Legal Framework

*Principles Applicable to Attorney Fees Award*

Section 425.16, subdivision (c), provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." It is well established that "[t]he amount of an attorney fee award under the anti-SLAPP statute is computed by the trial court in accordance with the familiar 'lodestar' method. [Citation.] Under that method, the court 'tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work. [Citations.]' " (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 491 (*Cabral*).)

"[A]s the parties seeking fees and costs, defendants 'bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended

and hourly rates.' [Citation.] To that end, the court may require defendants to produce records sufficient to provide ' "a proper basis for determining how much time was spent on particular claims." ' " (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1020.) Importantly, when considering a fee award, the trial court is not required to award the amount sought by the successful moving parties,[7] but instead "is obligated to award 'reasonable attorney fees under section 425.16 [that] adequately compensate[] them for the expense of responding to a baseless lawsuit.' " (*Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 92.)

A prevailing defendant on an anti-SLAPP motion is entitled to seek fees and costs " 'incurred in connection with' " the anti-SLAPP motion itself, but is not entitled to an award of attorney fees and costs incurred for the *entire* action. (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 21; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1383.) An award of attorney fees to a prevailing defendant on an anti-SLAPP motion properly includes attorney fees incurred to litigate the special motion to strike (the merits fees) plus the fees incurred in connection with litigating the fee award itself (the fees on fees). (*Wanland,* at p. 21.) However, a fee award under the anti-SLAPP statute may not include matters

---

[7] Indeed, there is authority that holds an unreasonably inflated fee request permits the trial court to deny *any* request for fees at all. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322 (*Christian Research*).) The rationale for this discretionary authority is that, if the trial court were required to award a reasonable fee when counsel overreached, it would encourage overreaching because the only penalty would be recovery of the reasonable fee for which counsel should have sought reimbursement from the start. (*Ibid.*)

7

unrelated to the anti-SLAPP motion, such as "attacking service of process, preparing and revising an answer to the complaint, [or] summary judgment research." (*Christian Research, supra,* 165 Cal.App.4th at p. 1325.) Similarly, the fee award should not include fees for "obtaining the docket at the inception of the case" or "attending the trial court's mandatory case management conference" because such fees "would have been incurred whether or not [the defendant] filed the motion to strike." (*Ibid.*) In short, the award of fees is designed to " 'reimburs[e] the prevailing defendant for expenses incurred *in extracting* herself from a baseless lawsuit' " (*Wanland,* at p. 22, italics added) rather than to reimburse the defendant for all expenses incurred *in* the baseless lawsuit.

*Standard of Review*

Although a SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees, he or she is entitled " 'only to reasonable attorney fees, and not necessarily to the entire amount requested. [Citations.]' [Citation.] We review the trial court's ruling for abuse of discretion."[8] (*G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 620.) Applying this standard, we may not disturb the trial court's fee determination " ' "unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*); cf. *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 587 [amount of attorney fees in vested in trial court discretion and, on

---

[8]    Certainly, the discretion of a trial judge is a legal discretion subject to the limitations of legal principles governing the subject of its action and, when the trial court mistakenly applies erroneous legal principles when exercising its discretion, we may review the error de novo. (See, e.g., *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)

8

appeal, the " 'only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that i[t] shocks the conscience and suggests that passion and prejudice influenced the determination.' "].)  When reviewing attorney fee awards, an appellate court must "[i]ndulg[e] all inferences in favor of the trial court's order . . . [and] presume the trial court's attorney fees award is correct."[9]  (*McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 704.)  Where, as here, a trial court severely curtails the number of compensable hours in a fee award, the operative impact of that presumption can include a presumption the trial court concluded the fee request was inflated.  (See, e.g., *Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 817 [substantial reduction in claimed costs "indicat[es] Levy improperly inflated his claimed" amounts].)

---

[9]     An additional principle of appellate review is operative in this appeal.  It is fundamental that an order is presumed correct, and the burden of affirmatively demonstrating error is on the appellant.  (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.)  This places on appellant the burden to provide an adequate record on appeal to allow the reviewing court to assess the purported error (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416), and if the record on appeal does not contain all of the documents or other evidence considered by the trial court, a reviewing court will "decline to find error on a silent record, and thus infer that substantial evidence" supports the trial court's findings.  (*Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 955.)

III

ANALYSIS

A. <u>The Abuse of Discretion Standard Applies to This Appeal</u>

Although BAD acknowledges the ordinary standard of review for fee awards is the deferential abuse of discretion standard, it appears to argue we should apply a de novo review to its claims in this appeal. We agree the determination of whether the trial court *selected* the proper legal standards in making its fee determination is reviewed de novo (see, e.g., *City of Sacramento v. Drew, supra,* 207 Cal.App.3d at p. 1297) and, although the trial court has broad authority in determining the amount of reasonable legal fees, the award can be reversed for an abuse of discretion when it employed the wrong legal standard in making its determination. (*Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 370.) However, our review of the trial court's *application* of the correct legal standards to the circumstances of a specific case requires that we employ the abuse of discretion standard. (*Cabral, supra*, 177 Cal.App.4th at p. 491.)

BAD cites numerous cases, including *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, to argue a fee award can be reversed when the court applied the wrong legal standards, and asserts those authorities support reversal of the fee award in this case. We believe the cases cited by BAD for its argument in favor of de novo review have no persuasive applicability here, because the record makes clear the court did *not*

10

misunderstand the legal matrix that guided its evaluation of BAD's fee request.[10] To the

contrary, the minute order addressing the various fee requests specifically recited that the

amount of an attorney fee award under the anti-SLAPP statute is to be computed by the

lodestar method, which begins with calculating the number of hours reasonably expended

on the anti-SLAPP motion (and the fees on fees motion) and excluding hours spent on

non-SLAPP tasks or that were inefficient or duplicative, and then multiplying those hours

---

[10]    BAD's petition for rehearing relies heavily on *McKenzie v. Ford Motor Co., supra,*
238 Cal.App.4th 695.  BAD appears to argue that, under *McKenzie,* when a court's
minute order contains an explicit statement of its reasons for a fee award in an anti-
SLAPP case, a reviewing court (1) must examine the stated reasons and (2) may not infer
that the discretionary determination of the amount of the fee award rested on any other
basis.  We believe BAD misreads *McKenzie*.  First, such a reading of *McKenzie* appears
inconsistent with the ordinary standard of appellate review that counsels, absent special
circumstances not present here (see, e.g. *Tellez v. Rich Voss Trucking, Inc.* (2015) 240
Cal.App.4th 1052 [discretionary decision on whether to certify a class]), we do *not*
address the trial court's *reasoning* and consider only whether the result was correct.  (See
generally *Truck Ins. Exchange v. County of Los Angeles* (2002) 95 Cal.App.4th 13, 20.)
More importantly, we interpret *McKenzie* as holding that, when the record affirmatively
shows the trial court's discretionary determination of fees pivoted on a factual finding
*completely lacking in evidentiary support*, the matter must be reversed with instructions
to redetermine the award.  In *McKenzie*, a buyer sued an automobile manufacturer under
the so-called "lemon law."  The buyer rejected the defendant's first section 998 settlement
offer and thereafter incurred additional attorney fees to continue the litigation.  However,
the buyer later accepted the defendant's *second* section 998 settlement offer, and
thereafter the buyer sought attorney fees.  The trial court granted fee request, but refused
to award any fees incurred *after* the first section 998 offer because the trial court found
the second settlement offer (ultimately accepted by the buyer) was indistinguishable from
the first offer, and therefore fees after the date of the first offer were unreasonable and
should not be recovered.  (*McKenzie,* at pp 698-702.)  The appellate court reversed,
holding that the record clearly showed the two offers were *not* indistinguishable (*id*. at
pp. 704-708), and therefore the basis for denying the buyer *all* attorney fees incurred
during the interim was an abuse of discretion.  Thus, we believe *McKenzie* stands only
for the unremarkable proposition that an "abuse of discretion is shown when it may be
fairly said that the court exceeded the bounds of reason *or contravened uncontradicted
evidence*." (*Mustachio v. Great Western Bank* (1996) 48 Cal.App.4th 1145, 1151.)

by the reasonable hourly rate prevailing in the community for similar work to obtain the "lodestar" (see, e.g., *Cabral, supra,* 177 Cal.App.4th at p. 491), and then considering whether to adjust that lodestar upwards or downwards under the facts of the case.

Because the record affirmatively shows the court understood and employed the correct legal matrix here, the cases cited by BAD have no application. For example, in *Graham v. DaimlerChrysler Corp., supra*, 34 Cal.4th 553, the court merely held that a trial court award, calculated by applying the same "risk multiplier" to a lodestar amount that amalgamated both fees and "fees on fees" work, should be reconsidered "in light of this opinion's conclusion that the risk multiplier for [fees on fees work] generally should be lower than for fees in the underlying litigation." (*Id*. at p. 584.) Thus, the ruling in *Graham* was premised on the finding the trial court did not apply (and indeed could not have applied) the new principle decided in *Graham*, which has no application here. The other authorities cited by BAD are appear to be similarly inapposite.[11] Because we

_____

[11] For example, BAD cites *Rogel v. Lynwood Redevelopment Agency* (2011) 194 Cal.App.4th 1319 as an example of a court reversing a fee determination where the court failed to apply the correct legal standards. However, in *Rogel*, the trial court calculated a lodestar of approximately $2.7 million for attorney fees in litigation against a governmental agency, but then applied a negative multiplier to that lodestar (reducing the award to approximately $540,000) because the court stated " '[I]t seems as though the money should be spent in Lynwood and not on the lawyers.' " (*Id*. at p. 1328.) *Rogel* reversed because it concluded that preservation of the government fisc was not a proper factor to consider when applying a multiplier to the lodestar. (*Id*. at p. 1321.) Here, although the award was less than sought by BAD, the *rationale* for the award was limited to proper factors (the court's evaluation of hours *reasonably* expended on the anti-SLAPP and the fees on fees motions and the *reasonable* hourly rate prevailing in the community), rendering *Rogel's* de novo consideration of the award inapposite. The other cases involved similar defects in the award. (See *Hogar Dulce Hogar v. Community Development Com. of City of Escondido* (2007) 157 Cal.App.4th 1358, 1361 [reversing

12

perceive that BAD's appellate attack on the fee award challenges *how* the court applied the applicable standards to its fee request, rather than on *what* standards the court employed, we reject BAD's argument that this court may abandon the abuse of discretion standard of review in favor of a de novo review of the fee award.

B. The Hourly Rate Claim

BAD first asserts that, when tabulating the lodestar, the trial court abused its discretion when it set a flat hourly rate of $275 for all of BAD's counsel because that rate disregarded the different levels of experience for each of BAD's counsel and disregarded BAD's evidence of the prevailing market rate.

The courts repeatedly have stated that the trial court is in the best position to value the services rendered by the attorneys in his or her courtroom (see, e.g., *Ketchum, supra*, 24 Cal.4th at p. 1132), and this includes the determination of the hourly rate that will be used in the lodestar calculus. (See, e.g., *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 700-703.) In making its calculation, the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009), the difficulty or complexity of the litigation to which

where record showed court categorically excluded from award any pre-litigation attorney fees, and most of work on "fees on fees" motion, even though law clearly provided both categories were properly awardable]; *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 154-155 [reversing award for numerous errors, including error in setting attorney fee hourly rate at lower "expert witness fee" rate where *only* evidence of reasonable hourly rate prevailing in the community was of higher rate and that evidence was unrebutted and opposing counsel indicated it was not challenging the higher rate].)

13

that skill was applied (*Syers Properties* at p. 700; accord, *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1114), and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases. (*Heritage,* at p. 1009.)

Here, the parties presented conflicting affidavits concerning the appropriate hourly rate for seasoned attorneys and fifth year associates. BAD's expert, who premised his opinion on numerous factors (including the so-called "*Laffey* Matrix"), testified that $750 per hour for Mr. S. Volker and $350 per hour for the three fifth-year associates working on the case was within the market range charged for similar services by similarly qualified attorneys. However, plaintiffs submitted contrary declarations that the market range charged for similar services by similarly qualified attorneys was much lower.[12] Moreover, the court was cognizant that the rate charged by a very seasoned attorney from the relevant community (San Diego), who represented Ms. Tisdale in this same litigation

---

[12] Two of plaintiffs' experts testified the range charged by a fifth-year associate in San Diego would begin as low as $200 per hour, and that attorneys with 25 plus years of experience charge between $450 and $500 per hour. Moreover, one of those experts, an attorney with particular expertise in anti-SLAPP litigation, noted such lower-billing associates "will be doing the 'heavy' lifting work of research and initial drafting of the pleadings" as well as still being on their "learning curve." Although BAD appears to argue on appeal that its expert was the *only* qualified attorney fee expert to provide evidence below, the record on appeal contains no suggestion BAD objected at trial to the qualifications of the two attorneys proffered by plaintiffs to give opinions on the hourly rate and total hours questions, and the qualification of a witness to state his or her opinion is waived by failure to object to the testimony when offered. (*Leach Corp. v. County of Los Angeles* (1964) 228 Cal.App.2d 634, 641.) Accordingly, the opinions expressed by plaintiffs' experts, "standing alone, is not only substantial evidence but is enough to sustain the judgment even in the face of a conflict." (*Ibid.*)

14

and whose anti-SLAPP motion successfully extricated her from the multiple and complex claims pleaded against her, was $275 per hour. Moreover, noted the trial court, the anti-SLAPP motion by BAD's attorneys involved only a *single* cause of action and did *not* involve either novel or complex issues.

On this record, the trial court concluded (1) the rate claimed by BAD's attorneys was excessive, and (2) a rate of $275 per hour was an appropriate overall rate to apply to the hours properly attributable to BAD's anti-SLAPP motion. Certainly, the trial court was not bound by the contrary opinions submitted by BAD's expert. (*Syers Properties III, Inc. v. Rankin, supra*, 226 Cal.App.4th at p. 702 ["the trial court was neither *required* to follow the *Laffey* Matrix nor to adopt the rate defense counsel opined was the 'market rate' for services of this type"].) BAD's appellate argument merely asks this court to reweigh the competing evidence. For example, BAD suggests the $275 rate charged by Tisdale's counsel was an "admittedly low-end contract rate with a public entity," and hence cannot represent an appropriate market rate, without citing anything in the record containing that "admission." BAD also argues the $275 rate lacked *any* evidentiary support because even plaintiffs' experts opined $450 was an appropriate rate for a seasoned attorney. This argument overlooks two alternative evidentiary groundings for selecting the $275 per hour rate. First the $275 per hour rate was found and used by the trial court as an appropriate rate when it considered the fee award for the "seasoned" attorney representing Ms. Tisdale (who was confronted with a more complex set of issues than was BAD's counsel), and we must presume there was evidentiary support for that

15

determination.[13]  Second, BAD's argument ignores the opinions contained in the attorney

declarations filed by plaintiffs that the *heavy lifting* would ordinarily be done by younger

associates, whose rates would begin as low as $200 per hour, rather than by a senior

attorney at a higher billing rate.[14]  (See fn. 12, *ante*.)  Because there was evidence this

---

[13]  BAD has not provided this court with the record, filed in connection with Tisdale's motion for attorney fees that was heard and decided concurrently with BAD's separate fee motion, on which the court premised its conclusion that $275 per hour was an appropriate market rate for a seasoned San Diego-based counsel addressing an even more wide-ranging set of issues (i.e., the attorney who represented Ms. Tisdale on *all* the claims pleaded against her).  Accordingly, we must presume substantial evidence supports the finding that $275 per hour is an appropriate market rate for a seasoned San Diego-based attorney addressing the types of issues that attorneys for BAD also addressed.  (See fn. 9, *ante*.)

[14]  Indeed, the trial court's award could well have been based on an implied finding that, in light of the trial court's express foundational conclusion that BAD's anti-SLAPP motion involved issues that "were not especially novel or complex," the "heavy lifting" should have been done by lower-level associates at the market rate of $200 per hour, as plaintiffs' declarations averred, rather than by BAD's lead attorney (Mr. Volker) at his much higher rate.  Although Mr. Volker has a stellar resume, and may justifiably command a $750 hourly rate when the intricacies of a particular case warrant his specialized expertise, the trial court's express finding that this case was neither "novel [n]or complex" can be construed as including an implied finding that utilizing an attorney with such expertise was unnecessary under the circumstances.  An attorney " 'is not necessarily entitled to compensation for the value of attorney services according to [his] own notion or to the full extent claimed by [him].  [Citations.]' " (*Levy v. Toyota Motor Sales, U.S.A., Inc., supra,* 4 Cal.App.4th at p. 816.)  Indeed, Volker conceded at oral argument that he had neither defended nor prosecuted an anti-SLAPP action before this case and, although he has great expertise and skill in other areas of law, his relative inexperience in matters of this nature could properly be "included in the hourly rate used to calculate the lodestar." (*Ketchum, supra,* 24 Cal.4th at p. 142; accord, *Graciano v. Robinson Ford Sales, Inc., supra,* 144 Cal.App.4th at p. 156 ["in ascertaining the reasonable hourly rate, the court . . . determine[s] the prevailing rate in the community for *comparable* professional legal services"].)  Assuming the trial court agreed the "heavy lifting" should have been done by lower-level associates at the market rate of $200 per hour, it could have concluded, for example, that 80 percent of the hours it ultimately allowed (103.6 hours) should have been done by associates at a rate of $200 per hour,

16

was a relatively uncomplicated anti-SLAPP motion, in which the yeoman's work could have been handled by associates billing much lower rates, there was evidence on which the trial court could have concluded the " 'reasonable hourly rate prevailing in the community for similar work' " (*Cabral, supra,* 177 Cal.App.4th at p. 491) was $275 per hour rather than the much higher rates charged by attorney S. Volker.[15]

BAD's claim—that failure to adopt the rates set forth by its expert was an abuse of discretion—is unconvincing.[16]  Instead, we conclude the trial judge was " ' "the best

rendering the associates' component of the fee award to be approximately $16,576.  The remainder of the fee award ($11,714), assuming the remaining 20 percent of the allowable hours was attributed to S. Volker, would have resulted in an award that employed a billing rate for Mr. Volker's allowable hours of over $550 per hour.  Certainly, there was ample evidentiary support for the implied conclusions that $200 per hour for lower-level associates and $550 per hour for a seasoned litigator fell within the range of appropriate market rates for San Diego attorneys, and (as discussed below, see fn. 16, *post*), the fact the court chose to apply a blended rate to *all* of the hours it found to be allowable provides no basis for reversing the trial court's award.

[15]  The federal courts appear to be in accord.  (See *Fisher v. City of San Diego* (S.D. Cal. Aug 14, 2013) 2013 WL 4401387 at p. *2 ["While delegation of more routine tasks is not required, an attorney who does everything himself would typically bill at a lower hourly rate than one who does only the most difficult work.  This avoids 'top-heavy' billing."]; accord, *Hernandez v. Taqueria El Grullense* (N.D.Cal. June 11, 2014) 2014 WL 2611214, at p. *3 ["[S]ince *Moreno,* various courts in the Ninth Circuit have found that hours are not reasonably expended when routine tasks are billed by highly experienced attorneys, rather than being delegated to colleagues with appropriate levels of experience."].)

[16]  BAD's petition for rehearing also claims the trial court was required to determine separate rates for each attorney involved to properly apply the lodestar analysis, and asserts the trial court's application of a single rate of $275 per hour to all attorneys who performed work (regardless of the level of skill and experience of each attorney) was therefore reversible error.  None of the cases relied on by BAD for this proposition reversed a fee award based on a failure to determine separate rates for each attorney involved, and other cases have either implicitly approved use of a blended rate (*Cates v.*

17

judge of the value of professional services rendered in his court" ' " (*Ketchum, supra,* 24 Cal.4th at p. 1132) and we affirm his determination because we are not " ' "convinced that it is clearly wrong." ' " (*Ibid.*)

C. <u>The Total Hours Claim</u>

BAD's fee motion submitted declarations, along with billing summaries, averring it spent 213.7 hours on the merits motion (nearly 80 percent of which was attributed to the senior attorney's efforts) and another 86.7 hours on the fees on fees motion (largely attributed to the work of the associates). BAD argues the court abused its discretion by reducing the hours worked in connection with the merits and fees on fees motions below the hours claimed by BAD in its fee motion.[17]

---

*Chiang* (2013) 213 Cal.App.4th 791, 819-820) or have refused to reverse an award premised on use of a blended rate (see, e.g., *Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, 272-273), particularly where, as here, there was evidence that would permit a conclusion a more highly paid senior partner should participate only in higher-level tasks and should delegate more mundane tasks to associates at much lower billable rates. (See, e.g., *Finkelstein v. Bergna* (N.D. Cal. 1992) 804 F.Supp. 1235, 1238.) Although we may have reached a different conclusion on the appropriate billing rate, it has long been recognized the above is an insufficient basis to find that the conclusion reached by the trial court was an abuse of its discretion. (Cf. *Bedford v. Pacific Structural Welding Corp.* (1932) 121 Cal.App. 162, 163.)

[17] BAD also appears to assert it was error for the trial court (1) to render an award for a lump sum number of hours rather identifying the hours it attributed to the merits motion and separately identifying the hours it attributed to the fees on fees motion, and (2) to reduce the hours without providing a mathematically-based explanation for the reductions it applied to each of the two motions. However, BAD cites no authority suggesting a trial court's determination of the appropriate amount of the fee award will be reversed absent some type of statement of decision, and the law is to the contrary. (*Ketchum, supra*, 24 Cal.4th at p. 1140 [rejecting claim that award requires " 'reasoned explanation' " for determinations on specific items within award; a trial court is "not required to issue a statement of decision with regard to the fee award."].) Moreover,

We conclude the decision to premise the lodestar amount by using an hour multiplier that was fewer hours than claimed by BAD was not an abuse of discretion. Although BAD's billing statements in support of a fee request form the " 'starting point' " for the " ' "hours reasonably expended" ' " component of the lodestar calculation (*Christian Research, supra,* 165 Cal.App.4th at p. 1324), the trial court is not bound to accept the evidence submitted by counsel when making its determination (*id*. at p. 1326), and may reduce the hours if it concludes the attorneys performed work unrelated to the anti-SLAPP motion, or represented work that was unnecessary or duplicative or excessive in light of the issues fairly presented.  (*Ibid*.)  When a trial court "is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether."  (*Ketchum, supra*, 24 Cal.4th at p. 1138, fn. omitted.)

Here, the record contains sufficient support for the trial court's decision to adjust downward the hour component for the lodestar calculus.  First, the court could conclude many of the hours represented work unrelated to either the merits motion or the fees motion, such as work on discovery, ex parte appearances, work surrounding the case management conference, and conferring with cocounsel.  The court could also have

BAD cites no authority suggesting a fee award may be reversed merely because the trial court awarded a reduced amount without explicit explanations about disallowed hours or unapportioned hours, and the law appears to be to the contrary.  (See, e.g., *Rebney v. Wells Fargo Bank* (1991) 232 Cal.App.3d 1344, 1349 [as long as record demonstrated award was based on lodestar approach, court is "not required to explain which of counsel's hours were disallowed, or how or whether any hours were apportioned" and appellate court must infer all findings on these points in favor of prevailing parties].)

concluded downward adjustment was necessary because many billings involved entries that were either vague or were "blockbilled" time entries, and represented padding.[18] (*Christian Research, supra,* 165 Cal.App.4th at pp. 1325-1326.)  Finally, the court could have concluded a substantial number of the hours claimed by BAD were unnecessary[19]

[18]    The trial court here expressly stated it had "culled through the billing statement," and had also considered the plaintiffs' opposition to the fee motion, in reaching its determination to severely reduce the "number of hours" component of the lodestar calculation.  As the court observed in *Christian Research, supra,* 165 Cal.App.4th at pp. 1325-1326: "Where, as here, the trial court severely curtails the number of compensable hours in a fee award, we presume the court concluded the fee request was padded. [Citations.]  An attorney's chief asset in submitting a fee request is his or her credibility, and where vague, blockbilled time entries inflated with noncompensable hours destroy an attorney's credibility with the trial court, we have no power on appeal to restore it."

[19]    Many of the hours claimed by BAD were expended to prepare and file a demurrer (mooted by the order granting the anti-SLAPP motion) attacking causes of action *not directed at BAD,* but instead appear to have been directed only at the other defendants (including Tisdale) for actions taken in their official capacities.  Although BAD appears to assert on appeal the court erred by excluding the efforts its attorneys devoted to the demurrer, that claim is based on BAD's assertion those efforts developed legal arguments that were "clearly 'inextricably intertwined' " with the arguments necessary to its successful anti-SLAPP motion, an argument presented below and rejected by the trial court.  The trial court was aware of the nature of the claims pleaded against Tisdale, as well as the single claim pleaded against BAD, and we are unconvinced the allegation that Tisdale was president of BAD somehow raised the potential that BAD would be held vicariously liable for Tisdale's actions in her governmental capacity.  (See fn. 4, *ante.*) Moreover, the trial court was also intimately familiar with the fact Tisdale had her own counsel mounting her own vigorous defense, which would permit the trial court to conclude BAD's legal efforts (beyond responding to the single cause of action against it) were superfluous and/or duplicative of the efforts of Tisdale's attorney, and therefore were not reasonably necessary expenses for *extracting BAD* from the baseless lawsuit. (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi, supra,* 141 Cal.App.4th at p. 22.)  Because BAD has not provided any part of the pleadings filed by Tisdale's attorney in this action, we must presume on this record the court had substantial evidence on which to reject BAD's claim that its efforts to extricate Tisdale from claims asserted against her in her official capacity were inextricably intertwined with or reasonably necessary to its efforts to extricate BAD from the single claim pleaded against BAD.

because it concluded that, although BAD's counsel had "expresse[d] confusion with the pleadings," the court found "there was only one cause of action that was the subject of [BAD's] anti-SLAPP motion and the issues were not especially novel or complex."

Under these circumstances, we cannot conclude the trial court abused its discretion in limiting the hour component of the lodestar calculus to a combined amount, for both the merits motion and the fees on fees motion, to over 100 hours.

## DISPOSITION

The trial court's attorney fees award is affirmed. Plaintiffs are entitled to their costs on appeal.

IRION, J.

WE CONCUR:

AARON, Acting P. J.

PRAGER, J.[*]

---

[*]    Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21