Filed 4/13/22  Zilberstein v. Petersen CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AHRON ZILBERSTEIN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL PETERSEN,<br><br>Defendant and Respondent. | B311978<br><br>(Los Angeles County<br>Super. Ct. No.18VECV00182) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judge Huey P. Cotton.  Affirmed as modified.

Law Offices of Stephen M. Feldman, Inc., and Stephen M. Feldman for Plaintiff and Appellant.

Gavrilov & Brooks, Ognian Gavrilov and Michael Coleman for Defendant and Respondent.

———————————————

Plaintiff and appellant Ahron Zilberstein sued Michael Petersen for false impersonation (Pen. Code, § 528.5) and cyberpiracy (Bus. & Prof. Code, § 17525) after Petersen created a website portraying Zilberstein as a fraudulent businessman and slumlord.  In an earlier unpublished decision, we reversed in part the trial court's order denying an anti-SLAPP motion[1] filed by Petersen in response to the suit. (*Zilberstein v. Petersen* (Oct. 23, 2020, B301779 [nonpub. opn.].).)

On remand, the trial court followed our directions to grant the anti-SLAPP motion with regard to the Penal Code cause of action and struck that claim from the complaint.  Petersen then moved for attorney fees, as a partially prevailing party, and was awarded $38,825 in fees and costs.

On appeal, Zilberstein contends that the fee award was erroneous because (1) Petersen represented himself throughout the legal proceedings, and failed to clearly establish he retained outside counsel for work associated with his anti-SLAPP proceedings; and (2) the amount of the fee award was excessive.  Zilberstein also challenges several of the costs included in the trial court's fee award order.

Other than a minor correction to the amount of the costs awarded to Petersen, we affirm the trial court's order.

---

[1]     SLAPP is an acronym for "strategic lawsuit against public participation."  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)  All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Lawsuit and Prior Appeal*[2]

The instant lawsuit was the seventh suit between Petersen and Zilberstein or his affiliates. According to Petersen, throughout the course of the prior lawsuits, he discovered that Zilberstein had been using the judicial system to defraud individuals out of money and property. In 2016, Petersen created the website "ahronzilberstein.com" to publish excerpts of pleadings filed against Zilberstein in other lawsuits.

Following the website's publication, Zilberstein filed suit against Petersen alleging causes of action for (1) credible impersonation of another through the internet (Pen. Code, § 528.5, subd. (e)) and (2) cyberpiracy—i.e., bad faith registration or use of a domain name that is identical or confusingly similar to the personal name of another person (Bus. & Prof. Code, § 17525).

In response, Petersen filed a special motion to strike the complaint pursuant to section 425.16, arguing that both causes of action were based on conduct in furtherance of his right to free speech on a public issue. He further argued that Zilberstein could not establish a probability of prevailing on the merits in either cause of action because he did not impersonate Zilberstein (as required for the impersonation charge) or act in bad faith (as required for the cyberpiracy cause of action).

---

[2] We derive some of the facts and procedural background from our prior opinion. (*Zilberstein v. Petersen* (Oct. 23, 2020, B301779 [nonpub. opn.].)

The trial court denied the motion, finding that although the publication of the website constituted protected activity under section 425.16, subdivision (e)(4), Zilberstein had met his burden of showing a probability of success on the merits of both causes of action. The court further found that the anti-SLAPP motion was frivolous, and intended to cause unnecessary delay in the proceedings, and awarded attorney fees to Zilberstein in the amount of $8,365.

On appeal, we agreed that both causes of action were based on activity protected by the anti-SLAPP statute and further found that Zilberstein established a probability of prevailing on the cause of action under the Business and Professions Code, but not on the cause of action under the Penal Code. Accordingly, we reversed the court's order with respect to the latter cause of action.[3]

On remand, the trial court entered a new order granting Petersen's anti-SLAPP motion as to the Penal Code cause of action. The court also rescinded its prior order awarding attorney fees to Zilberstein.

B. *Petersen's Motion for Attorney Fees*

After the trial court entered its new order granting Petersen's anti-SLAPP motion with regard to the Penal Code cause of action,

---

[3] In our disposition we stated that "[e]ach party shall bear its own costs on appeal." We made no pronouncement on the issue of attorney fees. (*Stratton v. Beck* (2018) 30 Cal.App.5th 901, 910; see also Cal. Rules of Court, rule 8.278(d)(2) ["Unless the court orders otherwise, an award of costs neither includes attorney's fees on appeal nor precludes a party from seeking them under rule 3.1702"].)

4

Petersen filed a motion for attorney fees and costs. Although he appeared in propria persona (in pro. per.)[4] throughout the underlying matter, Petersen declared he retained Ognian Gavrilov, highly experienced legal counsel, to assist in his defense to the lawsuit.

Petersen declared that he had incurred $65,200 in attorney fees to date, based on a total of 130.4 hours of assistance provided by Gavrilov at a rate of $500 an hour. Of that amount, 108.5 hours or $54,250 were incurred in researching and drafting his anti-SLAPP motion, reply to the opposition to the motion, and his appellate and reply briefs in this court. Given that he prevailed in striking one of the two causes of action alleged by Zilberstein, Petersen sought 50 percent of the amount incurred in relation to time spent directly on the anti-SLAPP motion—$27,125.

Petersen sought 100 percent of the remaining $10,950—or 21.9 hours incurred for the following work: 10.3 hours for the time Gavrilov spent on his preparation of a motion in opposition to the memorandum of costs submitted by Zilberstein (in relation to the trial court's original denial of his anti-SLAPP motion and finding that the motion was frivolous); 4.5 hours in opposition to discovery matters related to the anti-SLAPP motion, and 7.1 hours related to the instant fee motion.

---

[4] "'Pro se,' 'in propria persona,' 'pro persona' and 'pro. per.' can be used interchangeably. 'In propria persona' means 'in one's own proper person'; 'pro se' means, '[f]or himself; on his own behalf; in person.' [Citation.]'" (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378, fn. 4.)

Petersen also provided a declaration from counsel Gavrilov summarizing the hours spent on various areas of the anti-SLAPP motion and subsequent appeal, consistent with the time reported on Petersen's declaration and fee motion.

Finally, Petersen sought $750 in costs he incurred outside of his appeal to this court.

On December 16, 2020, the trial court granted Petersen's motion and awarded the total requested amount of $38,825 in fees and costs.

Zilberstein timely appealed.

## DISCUSSION

"The special motion to strike—or so-called anti-SLAPP motion—is subject to statutory fee shifting as follows. 'In any action subject to [the special motion to strike], a prevailing defendant . . . shall be entitled to recover his or her attorney's fees and costs." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 (*Ketchum*), quoting § 425.16, subd. (c).)

"Thus, under Code of Civil Procedure section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees. The fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to 'chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.]" (*Ketchum, supra,* 24 Cal.4th at p. 1131.)

A "prevailing defendant" on an anti-SLAPP motion is entitled to reasonable attorney fees even if the defendant "'has prevailed on some

6

claims but not others.'" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal. App. 4th 993, 1019 (*ComputerXpress*).) In such cases, there are several factors to be considered in determining the right to fees and costs. Those factors were discussed at length in *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 344–345.

The trial court in this case cited the *Mann* factors in its fee order, agreeing with Petersen that half of the hours expended in defending himself from the motion were warranted.[5] In so concluding, the court pointed out Petersen was not only partially successful on appeal, but that "the elimination of the Penal Code violation significantly change[d] the tenor of the case as the only remedy available to plaintiff is injunctive relief and restitution, if any." The court further noted Petersen's partial victory also narrowed discovery "as no inquiry into damages [will be] required" and no punitive damages are available for the remaining cause of action.

On appeal, Zilberstein does not argue that the 50 percent apportionment for the fees incurred by Petersen was in an of itself incorrect or excessive. Instead, Zilberstein argues that Petersen's pro. per. status should preclude any award in this case (for a variety of reasons we discuss) and that the hourly rate and number of hours reported by Petersen were excessive and therefore unreasonable. We address these contentions below.

---

[5] The court, consistent with Petersen's request, awarded Petersen 100 percent of the fees for the three motions (related to attorney fees and discovery matters) he identified outside the 50 percent ratio.

A. *Standard of Review*

"'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees [in the relevant context] have been satisfied amounts to statutory construction and a question of law.'" (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; see also *569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 433 fn. 8 (*569 East*).)

B.  *Notwithstanding his Pro. Per. Status, Petersen Was Entitled to Attorney Fees Incurred in Relation to his Anti-SLAPP Motion*

In his opening brief, Zilberstein makes various arguments as to why Petersen, who proceeded in pro. per. in the trial court, was not entitled to attorney fees. Zilberstein places these arguments under two headings: (1) "Respondent who is proceeding in pro se is not entitled to attorney's fees" and (2) "The court should establish a bright-line rule to establish how a pro se with a non-disclosed attorney relationship could recover attorney's fees." As explained below, we find no merit in any of the arguments advanced by Zilberstein.

First, although attorney fees under section 425.16, subdivision (c), are not recoverable by an *attorney* who is representing himself or herself in the action (*Witte v. Kaufman* (2006) 141 Cal.App.4th 1201, 1207–1211), such fees *are* recoverable by a pro se litigant who retains outside counsel (creating an attorney-client relationship) to assist in the

8

litigation.  (*Id.* at pp. 1211–1212; *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 524–525.)  Thus, "[i]f an attorney is in fact retained by the pro se litigant and renders legal services assisting in the lawsuit, the attorney need not be an attorney of record in order for the reasonable fees of the attorney to be awarded to a prevailing party." (*Mix v. Tumanjan Development Corp.* (2002) 102 Cal.App.4th 1318, 1324; *West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 706–707; accord, *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1423–1425.)

Here, Petersen stated in both his motion for fees, and associated declaration, that he retained Gavrilov as his attorney.  Petersen further provided a declaration from Gavrilov in which he set forth the hours he spent on Petersen's case, specifying the various tasks related to the anti-SLAPP motion.[6]  No more was required under the cases cited above, and Zilberstein cites to no relevant authority stating otherwise.[7]

---

[6]    For example, in summarizing the 20.6 hours he spent assisting Petersen with regard to the anti-SLAPP motion, Gavrilov declared that he spent .6 hours reviewing the complaint and answer; 7.2 hours researching the relevant case law pertaining to the application of anti-SLAPP statute and the two causes of action; 2.8 hours reviewing prior pleadings and actions between the parties and assisting Petersen in preparing a statement of facts; 1.4 hours reviewing Petersen's website and findings by various courts against Zilberstein that were placed on the website; 4.6 hours in preparing a memorandum of points and authorities; .9 hours on advising Petersen in the preparation and authentication of documents as pertinent to Petersen's declaration; and 3.1 hours on communications with Petersen regarding the preparation and filing of the anti-SLAPP motion.

[7]    We also note that in the trial court, in reply to Zilberstein's opposition, Petersen offered to submit his retainer agreement with Gavrilov to the court for its in camera review.  The court, after reviewing the submitted

Second, in his "bright line" contention, Zilberstein states that while he is not advocating that counsel need to be of record to allow the recovery of attorney fees by a pro se litigant, he believes that "such representation if not otherwise known should be disclosed to all concerned prior to seeking an award of attorney's fees."  Besides failing to offer any meaningful guidance on how, or in what form, said alternate "disclosure" should be made, the record in this case shows that Petersen and Gavrilov did in fact disclose Gavrilov's assistance early on in the litigation.  That is, in April 2019—two months after Petersen filed his anti-SLAPP motion and five months prior to Zilberstein's opposition—Gavrilov filed a declaration regarding the setting of bond for a preliminary injunction.  In that declaration, Gavrilov stated that Petersen sought out his assistance after Zilberstein filed the instant lawsuit and outlined the time he had spent thus far assisting Petersen with regard to the preliminary injunction and the preparation of his anti-SLAPP motion.  Gavrilov further declared that he had agreed to represent Petersen if the matter proceeded to trial.[8]

---

documentation, and holding a hearing on its tentative decision, apparently did not find such additional proof necessary.

[8]    In his opening brief, Zilberstein admits that "the existence of the ubiquitous Ognian [Gavrilov] was disclosed in a Declaration regarding setting of a bond for a Preliminary Injunction" but asserts that "there was nothing specific to indicate that [Gavrilov] was representing [Petersen] or would represent Respondent prior to trial."  As indicated above, however, the declaration most certainly put Zilberstein on notice that Petersen was receiving assistance from outside counsel.

Finally, Zilberstein complains that Petersen failed to submit an invoice or billing statement to prove that he has paid, or is obligated to pay, the amount of fees accrued by Gavrilov.

No such proof was necessary. (*Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 283 ["[S]ince attorneys are agents of their client [citation], the phrase, 'entitled to recover his or her attorney fees,' can certainly include recovery of the fees that the defendant's agent—the attorney—has accrued on defendant's behalf, even if the agent has waived payment from defendant, but not their recovery otherwise"]; *Building a Better Redondo, Inc., v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 873 [award of attorney fees under fee-shifting statutes is computed based on the reasonable market value of services even if attorney has performed services pro bono or for a reduced fee]; *cf. Pasternack v. McCullough* (2021) 65 Cal.App.5th 1050, 1053–1054, 1058 [trial court acted within its discretion in awarding fees at market rate rather than discounted rate at which counsel billed insurer]; *Ketchum, supra,* 24 Cal.4th at p. 1131 [attorney fees permitted even if no monies are paid by a party to the attorney for which fees are sought].)[9]

---

[9]     Zilberstein cites *Trope v. Katz* (1995) 11 Cal.4th 274, stating *Trope* "was pretty instructive in what needs to be established in order for a pro se party [to] recover attorney's fees" by explaining that the term "attorney's fees" is generally defined as "the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation." However, as explained by our high court in *PLCM Group, Inc. v. Drexler* (2000) 22 Cal. 4th 1084—wherein a party sought to make the same point by citing *Trope*—"[t]he question of how to measure attorney fees was not raised in *Trope*, which expressly involved only the 'narrow issue' whether pro se attorney litigants could recover attorney fees." (*Id.* at p. 1097.)

In sum, Petersen met all of the relevant criteria to allow payment for the services rendered by outside counsel.  Thus, the only remaining question is whether the trial court abused its discretion with regard to the amount of fees awarded to Petersen.

C.      *The Amount of the Fee Award Was Reasonable Under the Circumstances*

The amount of an attorney fee award under the anti-SLAPP statute is computed by the trial court in accordance with the familiar "lodestar" method.  (*Ketchum*, *supra*, 24 Cal.4th at pp. 1135–1136; *Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 93.)  "Under that method, the court 'tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work.'" (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 491.) A trial court's attorney fee award will not be set aside absent a showing that it is "manifestly excessive" under the circumstances.  (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 782.)

1.      *Hourly Rate*

"'In determining hourly rates, the court must look to the "prevailing market rates in the relevant community."  [Citation.]  The rates of comparable attorneys in the forum district are usually used.'" (*Nishiki v. Danko Meredith, P.C.* (2018) 25 Cal.App.5th 883, 898 (*Nishiki*); accord, *Heritage Pacific Financial, LLC v. Monroy* (2013) 215

12

Cal.App.4th 972, 1009 (*Monroy*). In making its calculation, the court should consider the experience, skill, and reputation of the attorney requesting fees. (*Monroy*, *supra*, at p. 1009.) The court may also rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate. (*Ibid.*)

Here, the trial court acted well within its discretion in awarding Petersen attorney fees at the hourly rate of $500. In his declaration, counsel Gavrilov stated that he was a managing shareholder in the Sacramento firm Gavrilov and Brooks, and had been practicing law since 2008, specializing in general civil litigation. Gavrilov further declared that his hourly rate of $500 per hour reflected the "reasonable market value of [his] services in this community, within the range of rates charged by private attorneys of similar skill, reputation and experience for comparably complex litigation."

On appeal, Zilberstein points out that Gavrilov is a Sacramento attorney and asserts that "[t]here [was] no evidence presented of a reasonable attorney fee in the community in which the action is pending for similar work." Although it is not clear what forum Gavrilov meant in stating that his fee was commensurate with the value of such services "in this community," the trial court stated in its fee order that "the billing rate per hour is at the top end of the range this court regularly sees for attorneys defending single litigants in tort cases." In so stating, the court necessarily found the rate to be *within* the range typically billed in its own forum. This is further confirmed by the fact that the trial court made no adjustments to the hourly rate and instead accepted it as the appropriate rate for the hours expended. (*Nishiki,*

13

*supra*, 25 Cal.App.5th at p. 899 ["[A] trial court has its own expertise in the value of legal services performed in a case and it may rely on its own familiarity with the local legal market in setting the hourly rate"], citations omitted; *Monroy*, *supra*, 215 Cal.App.4th at p. 1009.)

Zilberstein also argues that "[a] reasonable fee for the alleged services rendered by [Gavrilov] should have been no more than $300.00 to $350.00 per hour, if anything," because (1) the trial judge "did not know [Gavrilov] nor see his work or any sample thereof"; (2) the case was not "particularly complicated"; and (3) Gavrilov was "more of a consulting type than a hands-on, full litigation-type service."

The first contention is based on Zilberstein's assumption that Petersen is being "paid $500.00 per hour for his [own] work[,]" rather than the work of an attorney and as such amounts to mere speculation. (See *Nishiki, supra*, 25 Cal.App.5th at p. 897 [defendant's contention that billing statements were "suspect" was "simply speculation" and contrary to documentation submitted in support of attorney fee motion].)

The second and third contentions are based on Zilberstein's own view of what would constitute a reasonable hourly rate in this matter. Zilberstein's subjective opinion, absent evidence, is insufficient to warrant a finding of error in the trial court's determination. (Cf. *Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375 [trial court did not err in finding counsel's rate reasonable in reliance on counsel's declarations, where opposing party "did not offer any evidence to challenge any statement" therein].) We find no error in the hourly fee rate.

14

## 2. *Hours Spent*

The prevailing anti-SLAPP defendant is entitled to recover attorney fees and costs for the motions to strike only, not for the entire action.  (569 *East, supra,* 6 Cal.App.5th at p. 433.)  An award of fees may include the fees incurred in enforcing the right to mandatory fees under section 425.16 (*Ketchum, supra,* at p. 1141), as well as any attorney fees incurred on appeal.  (*ComputerXpress, supra,* 93 Cal.App.4th at pp. 1020–1021.)  "'California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent. [Citations.]'"  (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698.)

Zilberstein contends the trial court abused its discretion by awarding fees for matters unrelated to Petersen's anti-SLAPP motion, and that the hours claimed for tasks that were related to the anti-SLAPP were excessive.  We disagree.

First, Zilberstein contends that Petersen is not entitled to the 4.5 hours Gavrilov spent on opposing Zilberstein's *ex parte* application to take the deposition of cross-defendant Monika Radeva.  The record, however shows that Zilberstein filed the application by arguing that he had good cause to do so under the discovery provision of the anti-SLAPP statute—i.e., section 425.16, subdivision (g)—because the deposition was relevant to the anti-SLAPP motion itself.  Although the trial court found that Zilberstein had failed to demonstrate good cause, and denied the motion, Petersen was entitled to any fees he incurred in defending

15

against said motion.  (*569 East, supra,* 6 Cal.App.5th at p. 433 [a defendant is entitled to seek fees and costs  "incurred in connection with" the anti-SLAPP motion itself]; cf. *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 22 [stating that anti-SLAPP attorney fee provision "is intended to compensate a defendant for the expense of responding to a SLAPP suit" and as such "'is broadly construed'"].)[10]

Second, Zilberstein contends that the three hours spent for a letter brief filed to this court on appeal are neither "compensable [n]or warranted" because the letter "dealt with a very specific issue of [Petersen's] creation."  Zilberstein, however, provides no explanation of how or why the letter brief was frivolous or unworthy of compensation.  Accordingly, we will not further address this argument.  (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 498 ["'We may and do "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt"'"].)

---

[10]    In his reply brief, Zilberstein also challenges the time spent in opposing his memorandum of fees and costs as being unrelated to the anti-SLAPP motion.  In his opening brief, Zilberstein did not challenge the attorney fee award on this ground, only the costs for the filing fee.  Regardless, the memorandum of fees was filed by Zilberstein after the trial judge denied the initial anti-SLAPP motion (reversed by this court on appeal) and sua sponte found the motion was both frivolous and intended to cause unnecessary delay.  The fees incurred by Petersen in opposing the motion were clearly related to the anti-SLAPP motion itself.  (*569 East, supra,* 6 Cal.App.5th at p. 433.)

Zilberstein's arguments pertaining to the excessive nature of the hours charged by Gavrilov for the anti-SLAPP related tasks, are similarly deficient. That is, rather than point to specific evidence, Zilberstein sets out a series of rhetorical questions and/or expressions of doubt that Gavrilov truly provided Petersen with the hours of assistance claimed—e.g. ("[h]ow can one distinguish between the work product of [Gavrilov] and the work product of [Petersen]?") ("[Gavrilov], with a straight face and professing to bill at the rate of $500.00 per hour, claims he spent 41.8 hours in connection with the Anti-SLAPP Motion, Reply and attendant documents without being counsel of record") ("how could [Gavrilov] possibly justify spending 66.7 hours in connection with an Appellant Brief, Reply and Letter Brief when he was not of record, did not draft the documents or argue the matter?") ("it is the resolute belief by Appellant that the amount of time allegedly expended by [Gavrilov] was in fact the amount of time spent by [Petersen] in connection with each activity").[11]

---

[11] Zilberstein does, at one point, cite to the record to note that the declaration Gavrilov submitted in support of the instant motion for fees varies from the declaration he submitted over a year earlier in relation to the preliminary injunction bond. Specifically, Zilberstein notes that there is a two-hour discrepancy in the hours Gavrilov reported in relation to the anti-SLAPP motion.

Zilberstein, however, made this same point in his opposition to the motion for attorney fees and at the hearing on the trial court's tentative decision. We do not find that the trial court's failure to act on this discrepancy renders its award "manifestly excessive" or "clearly wrong." (*Children's Hospital & Medical Center v. Bontá*, s*upra*, 97 Cal.App.4th at p. 782; *Thayer v. Wells Fargo Bank N.A.* (2001) 92 Cal.App.4th 819, 832; cf. *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1323

"In the absence of evidence to the contrary, we presume that the trial court considered the relevant factors" (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67), including whether counsel reasonably expended the number of hours he spent on this action. (See *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 995; see also *Christian, supra,* 165 Cal.App.4th at p. 1324 ["[I]t is the trial court's role to examine the evidence, and we presume the court performed its duty"].)

On this record, we cannot conclude that the trial court abused its discretion in awarding Petersen his requested fees.

D. *The Cost Award Requires Correction*

In addition to attorney fees, Petersen received $750 in costs for: (1) $120 in filing fees for the anti-SLAPP motion and his opposition to the memorandum of fees and costs; (2) $550 in court reporter fees related to the memorandum of costs and order to show cause hearing, and (3) $80 in photocopying costs. Zilberstein argues these fees are either unrelated to the anti-SLAPP motion, unauthorized under section 1033.5 (setting forth allowable costs to prevailing party in trial court), or insufficiently substantiated by Petersen. We agree that the

---

(*Christian*) [appellate court should defer to trial court determinations even where conflict appears in declaratory evidence].)

18

photocopying costs are unauthorized under section 1033.5, subdivision (b)(3), but otherwise affirm the trial court's award of costs.[12]

First, we conclude that Petersen's opposition to the memorandum of fees filed by Zilberstein, following the trial court's initial denial of the anti-SLAPP motion, was sufficiently related to the anti-SLAPP motion to warrant costs and fees. (See fn. 10, *ante*.) Second, Zilberstein cites no authority requiring invoices or proof of payment for filing fees incurred in the trial court prior to an award of costs. Third, we disagree with Zilberstein's assertion that the court reporter fees were unauthorized because section 1033.5 prohibits costs of transcripts unless ordered by the court. (§ 1033.5, subd. (b)(5).) The invoice submitted by Petersen reflects that he was invoiced for the court reporter's services for a "[h]alf day court per diem." Subdivision (a)(11) of section 1033.5 expressly authorizes costs for "[c]ourt reporter fees as established by statute."

Accordingly, we will modify the court's award of costs to omit the photocopying charges, but not otherwise.

---

[12] Subdivision (b) of section 1033.5 provides that "[t]he following items are not allowable as costs, except when expressly authorized by law: [¶] . . . [¶] (3) Postage, telephone, and photocopying charges, except for exhibits." In his responding brief, Petersen does not argue that his photocopying costs are expressly authorized under another provision of law—or otherwise contest the point.

19

## DISPOSITION

The order granting Petersen's motion for attorney fees and costs is modified by a reduction of the cost award from $750 to $670, resulting in a new combined total award of $38,745. As modified, the trial court's order is affirmed.

Petersen is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.

20