*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 7**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

WAYNE ASTON and VALLEY FORGE IMPACT PARK FILLMORE LLC,
*Appellants,*

*v.*

CHRONICLE-PROGRESS LLC, DUMOR PUBLISHING LLC d/b/a
MILLARD COUNTY CHRONICLE-PROGRESS, and MATT WARD,
*Appellees.*

No. 20241202
Heard December 12, 2025
Filed April 2, 2026[*]

On Direct Appeal

Fourth District Court, Millard County
The Honorable Anthony L. Howell
No. 230700053

Attorneys:

Ryan B. Frazier, Justin W. Starr, Christopher A. Bates,
Qiwei Chen, Salt Lake City, for appellants

Jeffrey J. Hunt, David C. Reymann, Kade N. Olsen, Salt Lake City,
for appellees

JUSTICE NIELSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE PETERSEN,
ASSOCIATE CHIEF JUSTICE POHLMAN, and JUDGE NELSON joined.

Having recused herself, JUSTICE HAGEN did not participate herein;
DISTRICT COURT JUDGE STEPHEN L. NELSON sat.

---

[*] As of January 31, 2026, "The Supreme Court consists of seven justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme Court Standing Order No. 18, this court sat and rendered judgment in this matter as a division of five justices.

JUSTICE NIELSEN, opinion of the Court:

## INTRODUCTION

¶1　When someone is sued for defamation and gets the case dismissed in its early stages on what's called a "special motion for expedited relief," the court must award attorney fees "related to" that motion. Wayne Aston and his company Valley Forge Impact Park Fillmore LLC (who we collectively call Aston) sued the newspaper Millard County Chronicle-Progress and its writer/editor Matt Ward (who we collectively call the Chronicle-Progress) for defamation. The Chronicle-Progress got the case dismissed on a special motion and requested nearly $400,000 in attorney fees. The district court granted that fee request without analyzing whether each component of the request "related to" the special motion. We reverse and hold that a successful defamation defendant requesting fees related to a special motion must show that a given task was reasonably necessary to prosecute the special motion. Where that connection exists, fees are available; where it does not, they are not.

## BACKGROUND

¶2　Wayne Aston is a real estate developer. Aston bought land near Fillmore in Millard County, intending to develop it under the name Valley Forge Impact Park. Over the next two years, the nature and scope of the Valley Forge project morphed. Initially, it was supposed to "produce modular housing units . . . using recycled materials;" later, it became a waste conversion plant, a hydrogen production plant, a geothermal plant, a data center, and a solar panel and hydrogen cell manufacturing plant. On top of these protean plans, Aston had difficulty securing the necessary amount of land and water and getting the requisite city approvals. Undeterred, Aston insisted that he could make the project work if the Fillmore City Council would issue a bond to fund Valley Forge.

¶3　When Aston pitched his ideas at city council meetings, Matt Ward from the Millard County Chronicle-Progress was there, interviewing Aston and reporting the goings-on. When the Chronicle-Progress dug into Aston's business history, it discovered a series of investor lawsuits, failed business deals, and bankruptcies. It published a series of articles portraying Aston as a

2

serial con man who brought "his road show to Millard County" to sell a boondoggle to the Fillmore City Council.[1]

¶4    Fillmore City ultimately rejected the project. Aston sued the Chronicle-Progress and Ward for defamation, claiming that the Chronicle-Progress's false reports had caused his lenders to back out, scuttling the project and causing him to lose nearly $20 million in business interests and profits. Aston filed three complaints: an original, a first amended, and a second amended. In them, he alleged that the Chronicle-Progress had made fourteen defamatory statements across five articles. After answering each complaint, the Chronicle-Progress filed a special motion to dismiss, asserting various defenses, including that what it had said was true, was opinion, or was a fair report of public proceedings.

¶5    The district court granted the special motion in a thorough and reasoned ruling. After concluding that Utah's defamation statute applied, it carefully examined each allegedly defamatory statement in the second amended complaint and determined that the statements were in context either true, vague, qualified, expressions of opinion, or privileged. In its ruling, it took Aston to task several times for his unhelpful responses and specious arguments. It even went so far as to formally admonish him for sloppy—if not outright misleading—portrayals of the allegedly defamatory statements in his complaints.

¶6    The Chronicle-Progress then moved for $346,192 in attorney fees and $464.19 in costs. The amount of time expended

---

[1] To get a flavor for the reporting, some excerpts: "The man behind plans for a $280 million manufacturing project on 151 acres in Fillmore city has left a trail of bad debts, bitter business disputes, multiple bankruptcies, and millions of dollars in judgments against him." Matt Ward, *Ugly Legal Disputes, Fraud Accusations Dog Entrepreneur Behind $280 Million Fillmore Factory Project*, MILLARD COUNTY CHRONICLE-PROGRESS, Jan. 25, 2023, at 1. "Sued by sour business partners, unpaid contractors and jilted investors, serial entrepreneur Wayne Aston is unapologetic, and nonetheless poised to bring his road show to Millard County." *Id.* "Aston's checkered business history, littered with personal bankruptcies, court judgments and numerous allegations of business fraud, have also likely impacted the city's willingness to move forward" with the project. Matt Ward, *Fillmore City PID with developer at risk*, MILLARD COUNTY CHRONICLE-PROGRESS, May 24, 2023, at 6.

was exceptional for a case in its early stages: over 670 hours. About 75% of that time was billed by the two senior attorneys, with the remaining 25% billed by associates and a paralegal.

¶7    The Chronicle-Progress justified this time and expense based on the need for extensive briefing on the special motion (which it blamed on Aston's "scattershot" briefing and "multiple deficiencies" in his pleadings), the complexity and specialized nature of the issues, and the existential threat that a $20 million suit posed to it. It also argued that all the work in the case was related to the special motion because it was either preliminary to, or part and parcel of, the special motion. This swept in everything from reading the complaint to preparing and arguing the special motion, including tasks like making initial disclosures and getting a refund on an improperly filed jury demand. It provided billing records to support its claim, but many of the entries were redacted, either in whole or in part.

¶8    Aston argued that the amount of time spent was unreasonable, particularly in light of other defamation cases. He also argued that much of the billing was not related to the motion itself either because it included time spent on tasks that the Chronicle-Progress would have had to do anyway or because the records were redacted, making it impossible to tell what the time was spent doing.

¶9    At the hearing on the fee motion, the court granted the Chronicle-Progress's request and told its counsel to "submit a proposed order about what you are asking for" and the court would "edit it from there." Counsel added that they would "also submit a supplemental declaration that just includes the last piece"—that is, the fees incurred in calculating fees. The court said, "That will be great," thanked the parties, and closed the hearing.

¶10 A short time later, the Chronicle-Progress filed a supplemental fee motion for the amount incurred drafting and arguing the original fee motion—$46,941. Of the ninety-one hours involved in that, almost seventy were billed by senior attorneys. The Chronicle-Progress filed a notice to submit that same day, apparently believing that the matter of supplemental fees had been settled by the court's oral ruling. The court granted the Chronicle-Progress's fee motion, adopting its proposed order verbatim a little more than one business day after the supplemental motion was filed. Aston appealed.

**STANDARDS OF REVIEW**

¶11 Aston raises two issues. First, he argues that the district court erred by ordering fees for work unrelated to the motion to dismiss. This turns on what the meaning of "related to" is in the fee statute. The meaning of a statute is a legal question on which we afford the district court no deference. *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863. Second, he argues that the court's fee award was unreasonably large. We review a district court's ruling on the reasonableness of a fee award for abuse of discretion. *Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, ¶ 52, 308 P.3d 424. Under this standard, we will reverse only if it "was beyond the limits of reasonability . . . or not based on an evaluation of the evidence." *Id.* (cleaned up).

**ANALYSIS**

I. THE UNIFORM PUBLIC EXPRESSION PROTECTION ACT PROTECTS DEFENDANTS FROM MERITLESS DEFAMATION SUITS BY PROVIDING FOR EARLY DISMISSAL AND FEES REASONABLY NECESSARY TO PROSECUTE A SPECIAL MOTION FOR EXPEDITED RELIEF

¶12 Both the First Amendment and the Utah Constitution protect the freedom of speech. U.S. CONST. amend. I; UTAH CONST. art. I, § 15. Whether those protections cover libelous or defamatory statements—that is, things said that are false and hurt someone's reputation—depends on myriad things, from the speech's target and topic to various defenses and privileges. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 270–75 (1964); *see also Jensen v. Sawyers*, 2005 UT 81, ¶ 50, 130 P.3d 325 ("In reaching an accommodation consistent with freedom of speech, defamation has accumulated a considerable assortment of defenses, privileges, heightened burdens of proof, and particularized standards of review.").

¶13 Sorting out such potentially complicated claims can take a lot of time and money. This gives deep-pocketed and litigious plaintiffs incentive to use the court process itself as punishment[2]— that is, to bring and drag out meritless suits not to vindicate their reputation, but to hurt others financially for saying things that they don't like. These kinds of lawsuits are called by the acronym SLAPP (Strategic Lawsuits Against Public Participation).

---

[2] Credit for this phrase to Malcolm M. Feeley, THE PROCESS IS THE PUNISHMENT: HANDLING CASES IN A LOWER CRIMINAL COURT (1992).

¶14 To limit the possibility of process-as-punishment, many States have enacted anti-SLAPP statutes. Utah's recently minted version is called the Uniform Public Expression Protection Act (UPEPA). UTAH CODE §§ 78B-25-101 to -115;[3] *see also Mackey v. Krause*, 2025 UT 37, ¶¶ 34–38, 575 P.3d 1162 (discussing UPEPA's history, purpose, and procedures). UPEPA discourages SLAPP suits in two ways relevant here: first, it provides for a shortcut procedure—called a "special motion for expedited relief," UTAH CODE § 78B-25-103—to dispose of meritless claims within a short time after filing;[4] second and relatedly, it awards defendants who succeed through that procedure with fees "related to the" special motion. *Id.* § 78B-25-110.

¶15 The merit (or rather, lack of merit) of the defamation claims is not contested here, only the fee award. The fee provision, Utah Code section 78B-25-110, states (with our emphasis) that "the court shall award . . . reasonable attorney fees . . . *related to the [special] motion [for expedited relief]* . . . to the moving party if the moving party prevails on the motion."

¶16 The dispute here is over what "related to the motion" means. "When interpreting statutes, our goal is to ascertain the intent of the legislature, the best evidence of which is the plain language of the statute itself." *Ross v. Kracht*, 2025 UT 22, ¶ 21, __ P.3d __ (cleaned up).

¶17 The plain meaning of "related to" in the context of legal motions is to be "[c]onnected in some way."[5] *Related*, BLACK'S LAW

---

[3] Unless otherwise noted, all statutory citations are to the current code for the reader's convenience.

[4] UPEPA's special motion must be filed "[n]ot later than 60 days" after receiving a complaint. UTAH CODE § 78B-25-103. It must be heard within 60 days of filing. *Id.* § 78B-25-105. And the court must rule within 60 days of the hearing. *Id.* § 78B-25-108. Immediate appeal is available from a denial. *Id.* § 78B-25-109.

[5] This context rules out familial ("I'm related to the Mayor."), group ("Dogs are related to wolves."), or sympathetic ("I really relate to the lyrics in that song!") meanings. *Related*, BLACK'S LAW DICTIONARY (12th ed. 2024) (meanings 2. and 3.); *see also Relate to someone/something*, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY & THESAURUS, (4th ed. 2013) (alternative meanings), (continued . . .)

6

DICTIONARY (12th ed. 2024) ("Connected in some way; having relationship to or with something else <a closely related subject>."); *Relate to someone/something*, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY & THESAURUS (4th ed. 2013) ("to be connected to, or to be about someone or something"), https://dictionary.cambridge.org/us/dictionary/english/relate-to?q=relate+to+someone%2Fsomething (last visited March 16, 2026); *Relate to*, MERRIAM-WEBSTER.COM DICTIONARY (defining this phrasal verb as "to connect (something) with (something else)"; "to be connected with (someone or something): to be about (someone or something)"), https://www.merriam-webster.com/dictionary/relate%20to (last visited March 16, 2026); *see, e.g.*, *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 47 (1987) (holding that "relate to" in ERISA pre-emption clause meant "has a connection with or reference to" a covered retirement plan (cleaned up)).

¶18 To be sure, connection can be a matter of degree; a person is "related to" her parents, her sixth cousins, and ultimately the whole human family. Given this potential indeterminacy, the parties here would have us read some qualification into the statutory language. The Chronicle-Progress would have us hold that "related to" means "reasonably related to" — that is, everything in the case during the expedited special-motion process is either directly connected to it (like researching, drafting, and arguing the motion or doing fact discovery aiding it) or preliminary to it (like filing answers and doing initial disclosures). Functionally, this would mean anything done in the case up through the special motion. In support, the Chronicle-Progress cites a policy within UPEPA commanding courts to "broadly construe[] and appl[y]" it "to protect the exercise of the right of freedom of speech and of the press" in the federal and state constitutions. UTAH CODE § 78B-25-111. On the other side, Aston would have us hold that "related to" means "reasonably necessary to prosecute the motion," and exclude things that have nothing to do with the motion and that the Chronicle-Progress would have had to do anyway, like file answers and make initial disclosures. *See* UTAH R. CIV. P. 12, 26.

---

https://dictionary.cambridge.org/us/dictionary/english/relate-to (last visited March 17, 2026); *Relate to*, MERRIAM-WEBSTER, (same), https://www.merriam-webster.com/dictionary/relate%20to (last visited March 17, 2026).

¶19 We think Aston has the better of the argument overall, if not in all the details. Under UPEPA's fee statute, a court is tasked with awarding "reasonable attorney fees . . . related to the [special] motion." UTAH CODE § 78B-25-110. We long ago laid out the factors for courts to use in deciding the reasonableness of fees in *Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988). One of those factors was whether the work performed was "reasonably necessary to adequately prosecute the matter." *Id.* The "matter" that the Legislature designated here as the proper subject of fees is the special motion. So, reading the reasonableness and relatedness requirements together in light of longstanding principles in this area, reasonable attorney fees are those reasonably necessary to prosecute the special motion.

¶20 This plain-language reading is consistent with the intent of the uniform act's drafters. *See State v. Christensen*, 2001 UT 14, ¶ 8, 20 P.3d 329 (referencing legislative history to confirm plain-language analysis). The uniform act was drafted and promulgated by the Uniform Law Commission. *See* UNIF. PUBLIC EXPRESSION PROTECTION ACT (UNIF. L. COMM'N 2000), https://www.uniforml aws.org/committees/community-home?communitykey=4f486460 -199c-49d7-9fac-05570be1e7b1 (last visited March 17, 2026). In its commentary expounding on the "reasonable attorney's fees . . . related to the motion," it said that the "term 'attorney's fees' means the fees paid to the attorney to compensate for his or her time and effort *in the prosecution or defense of the motion*." *Id.* § 10 cmt. (emphasis added); *see also* THOMAS R. BURKE, ANTI-SLAPP LITIGATION § 2:103 (Rutter Grp. Sep. 2025 update) ("A prevailing defendant on an anti-SLAPP motion is entitled to seek fees and costs incurred in connection with the anti-SLAPP motion itself, but is not entitled to an award of attorney's fees and costs incurred for the entire action.").

¶21 This interpretation is also consistent with other of Utah's fee statutes. The Legislature sometimes awards fees broadly by tying an award to the case as a whole.[6] Other times, it limits fee

---

[6] *See, e.g.*, UTAH CODE §§ 4-38-501(1)(d), 13-5a-103(1)(b)(ii), 13-11a-6(3)(d), 13-12-7(4), 13-21-9, 13-40-402(1)(b), 20A-1-805(1), 26B-3-1027, 32B-14-402(2)(a)(ii), 34-27-1, 34-51-301(2), 48-3a-806(2), 52-4-303(4), 52-6-201, 202, 52-7-201 to -202, 53E-6-702(2), 57-16-8, 57-16-15(1)(d), 58-55-503(8)(d), 61-1-105(4)(c), (5), 63G-20-204, 70A-7a-601(1), 73-2-28, 75-3-719, 76-5-704(3), 76-9-1412, 78B-3-104, 78B-3-

(continued . . .)

awards according to a subset of litigation.[7] The Legislature chose the latter, qualified route in UPEPA. That qualification must be meaningful—that is, limit recovery to something less than the whole case. *See, e.g., Smith v. Zilverberg*, 481 P.3d 1222, 1230 (Nev. 2021) (holding that qualification that fees awardable if "incurred in responding to" a particular motion was significant where other portion of same statute had no such qualification, and thus justified fees "incurred from the inception of the litigation, rather than just those incurred in litigating" the motion) (cleaned up). Our plain-language reading gives appropriate limitation to the qualified fee statute here.

¶22 This interpretation is further consistent with the practice of several other states with similar statutory language. We first look to those states which have passed the uniform law, as we must give "consideration . . . to the need to promote uniformity of the law

---

418.5, 78B-5-825, 78B-6-311 (as interpreted by *Goggin v. Goggin*, 2013 UT 16, ¶ 32, 299 P.3d 1079), UTAH CODE §§ 78B-6-1904(1)–(2), 78B-6-2502, 78B-11-126(3), 81-1-203.

[7] *See, e.g.*, UTAH CODE §§ 57-8-49(2) (awarding fees "*incurred in collecting*" a judgment in a lien enforcement action (emphasis added)), 57-8a-306(1) (awarding fees in lien enforcement actions "incurred before the judgment or decree" or incurred "collecting the judgment"), 57-8a-227(5)(c) (fees limited to those "incurred by the lot owner in obtaining the inspection and copies of the requested documents"), 63A-14-708(3)(a) (explaining that complainant in ethics matter who files nonmeritorious complaint may be liable for "reasonable attorney fees and costs for legal representation *during the complaint review process*." (emphasis added)), 63G-2-802(3)(a) (permitting awards of "reasonable attorney fees and costs reasonably incurred *in connection with a judicial appeal* to determine whether a requester is entitled access to records under a records request" (emphasis added)), 77-11b-305(3) ("A claimant who prevails only in part is entitled to recover reasonable legal costs and attorney fees only on an issue on which the party prevailed."), 78B-21-122(4)(b) (receivership actions for "*the fees and expenses of the receivership*" and "*actual damages caused by the appointment*" (emphases added)); *see also* UTAH R. CIV. P.101(*l*) (fees available if "caused by the failure or continuance" where there is a late filing); UTAH R. APP. P. 33(a), (b) (limiting award to particular motions and appeals).

with respect to the uniform law's subject matter among states that enact the uniform law." UTAH CODE § 78B-25-112. Twelve states (Delaware, Hawaii, Idaho, Iowa, Kentucky, Maine, Michigan, Minnesota, Montana, New Jersey, Tennessee, and Washington) have adopted fee language identical or nearly so to UPEPA's.[8] Unfortunately, like UPEPA, these provisions are of recent vintage and (with the exception of Kentucky, discussed and distinguished below) lack interpretive caselaw on this point.

¶23 Many other states either have no anti-SLAPP law (Alabama, Alaska, Mississippi, New Hampshire, North Carolina, North Dakota, South Carolina, South Dakota, West Virginia, Wisconsin, and Wyoming), an anti-SLAPP law with no fee award provision (Maryland),[9] or anti-SLAPP laws with fee award provisions for defendants that are worded more broadly than UPEPA's (Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Indiana, Kansas, Louisiana, Massachusetts, Missouri, Nebraska, Nevada, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Texas, Vermont, Virginia, as well as Washington, D.C.).[10]

---

[8] DEL. CODE tit. 10, § 6010(a); HAW. REV. STAT. § 634g-9; IDAHO CODE § 6-3910; IOWA CODE § 652.10; KY. REV. STAT. ANN. § 454.478; ME. STAT. tit. 14, § 740; MICH. COMP. LAWS § 691.1860; MINN. STAT. § 554.16; MONT. CODE § 27-34-110; N.J. REV. STAT. § 2A:53A-58; TENN. CODE § 20-17-107(a)(1); WASH. REV. CODE § 4.105.090.

[9] MD. CODE, CTS. & JUD. PROC., § 5-807.

[10] ARIZ. REV. STAT. § 12-751(F); ARK. CODE § 16-63-506(b)(1); CAL. CIV. PROC. CODE § 425.16(c)(1); COLO. REV. STAT. § 13-20-1101(4)(a); CONN. GEN. STAT. § 52-196a(f)(1); D.C. CODE § 16-5504(a); FLA. STAT. § 768.295(4); GA. CODE ANN. § 9-11-11.1(b.1); IND. CODE § 34-7-7-7; KAN. STAT. ANN. § 60-5320(g); LA. CODE CIV. PROC. ANN. art. 971(B); MASS. GEN. LAWS ch. 231, § 59H; MO. REV. STAT. § 537.528(2); NEB. REV. STAT. ANN. § 25-21,243(1); NEV. REV. STAT. § 41.670(1)(a), (2); N.M. STAT. ANN. § 38-2-9.1(B); N.Y. CIV. RIGHTS LAW § 70-a(1); OHIO REV. CODE ANN. § 2747.05(A); OKLA. STAT. tit. 12, § 1438(A)(1); OR. REV. STAT. § 31.152(3); 42 PA. CONS. STAT. § 8340.18; 9 R.I. GEN. LAWS § 9-33-2(d); TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1); VT. STAT. ANN. tit. 12, § 1041(f)(1); VA. CODE ANN. § 8.01-223.2(C).

(continued . . .)

¶24 But we are not entirely without guides. Some of these states with more broadly worded defense award provisions have plaintiff-award provisions that resemble in relevant part Utah's defense provision.[11] Nevada is one of those states. In construing Nevada's more broadly worded defense provision (which awards "reasonable costs and attorney's fees to the person against whom the action was brought," NEV. REV. STAT. § 41.670(1)(a)), the Nevada Supreme Court recently explained that Nevada's narrower plaintiff provision (which is limited to "reasonable costs and attorney's fees incurred in responding to the motion," *id.* at § 41.670(2)) was "particularly illuminating" because it showed that the legislature intended to award a prevailing defendant those fees "incurred from the inception of the litigation, rather than just those incurred in litigating the anti-SLAPP motion." *Zilverberg*, 481 P.3d at 1230. Though the conclusion here is the converse (limitation rather than non-limitation) and Utah's defense fee provision is worded more broadly than Nevada's plaintiff provision, the logic of limitation likewise applies.

¶25 Illinois and Guam have adopted defense fee provisions with limitations similar to UPEPA's. Illinois's statute awards "reasonable attorney's fees and costs *incurred in connection with the [equivalent of a special] motion*." 735 ILL. COMP. STAT. § 110/25 (2025) (emphasis added). Illinois appellate courts have interpreted this to impose a requirement that the work be reasonably related to the motion. *See Sandholm v. Kuecker*, 962 N.E.2d 418, 435–36 (Ill. 2012) (rejecting whole-case interpretation of fee provision and holding that statute awards "only those fees which can specifically be delineated as incurred in connection with the motion to dismiss

---

Where many of these states have language stating that proper fees "includ[e]" costs and fees from the motion, that language is not likely limiting. *See* UTAH CODE § 68-3-12(1)(f) (stating that forms of "include" in statutes indicate a non-exhaustive list).

[11] *See, e.g.,* GA. CODE. ANN. § 9-11-11.1(b.1) (awarding plaintiff fees "associated with the motion" to dismiss where motion frivolous or for delay); IND. CODE § 34-7-7-8 (same, "to answer the motion"); KAN. STAT. ANN. § 60-5320(g) (same, "related to the motion"); NEV. REV. STAT. § 41.670(1)(a),(2) (same, "incurred in responding to the motion"); OHIO REV. CODE ANN. § 2747.05(B) (West) (same); 42 PA. CONS. STAT. § 8340.18(b) (same, "incurred in opposing the assertion of protected public expression immunity").

filed under the Act"); *Midwest REM Enters., Inc. v. Noonan*, 42 N.E.3d 46, 68 (Ill. App. Ct. 2015) ("[T]he trial court should have awarded [the prevailing party] all fees reasonably necessary for presentation of her motion to dismiss, even though many of the legal services used in preparing that motion also assisted in the presentation of [another motion]."); *Shoreline Towers Condominium Ass'n v. Gassman*, 936 N.E.2d 1198, 1212–13 (Ill. App. Ct. 2010) ("[W]e believe the legislature intended the words 'in connection with the motion' to include proceedings which relate to, and are a consequence of, the grant of the motion."). So too here.

¶26  Guam's statute states that "the court shall award a moving party who is dismissed, without regards to any limit under Guam law: (1) costs of litigation, including reasonable attorney and expert witness fees, *incurred in connection with the motion*." 7 GUAM CODE § 17106(g) (emphasis added). The Guam Supreme Court has held that this limitation prevented an award for "the costs of preparing [a] counterclaim" because those costs were "not incurred in connection with the motion." *Enriquez v. Smith*, 2015 Guam 29, ¶ 34. While not explicit, this implies a need for a reasonable necessity for a given task in prosecuting the equivalent of a special motion.

¶27 California's provision provides for "attorney's fees and costs" to a "prevailing defendant on a special motion to strike." CAL. CIV. PROC. CODE § 425.16(c)(1) (West). California appellate courts have interpreted this language to require that fees to be tied to the equivalent of a special motion. *See S.B. Beach Props. v. Berti*, 138 P.3d 713, 717 (Cal. 2006) (discussing legislative history supporting conclusion that "the fee provision applies only to the motion to strike, and not to the entire action" (cleaned up)); *569 E. Cnty. Boulevard LLC v. Backcountry Against the Dump, Inc.*, 212 Cal.Rptr.3d 304, 310 (Cal. Ct. App. 2016) (holding "fees and costs incurred *in connection with* the anti-SLAPP motion itself," awardable "but . . . not . . . for the *entire* action" (cleaned up) (emphases added)). The fee award "properly includes attorney fees incurred to litigate the special motion to strike" and fees to calculate the fees, but "may not include matters unrelated to the anti-SLAPP motion, such as attacking service of process, preparing and revising an answer to the complaint, or summary judgment research," or other fees that "would have been incurred whether or not the defendant filed the motion to strike." *Id.* at 311 (cleaned up). At bottom, the prevailing defendant is reimbursed for "expenses incurred *in extracting* herself from a baseless lawsuit," not "for all expenses incurred *in* the baseless lawsuit." *Id.* (cleaned up).

¶28 We find this reasoning persuasive in part. Though the language of the California statute is ambiguous on the connection between fees and a motion to dismiss, UPEPA is crystal-clear that the only awardable fees are those "related to" the special motion. UTAH CODE § 78B-25-110. That is, like California's statute, a prevailing defendant must be reimbursed for "expenses incurred in extracting herself from a baseless lawsuit" rather than "for all expenses incurred in the baseless lawsuit." *569 E. Cnty.*, 212 Cal.Rptr.3d at 311 (cleaned up). We also agree that both reasonable merits fees and reasonable fees for litigating those fees (often called "fees-on-fees," *see Doe v. Burke*, 133 A.3d 569, 579 (D.C. 2016)), are awardable. But we part ways with California courts that the only tasks reasonably necessary to prosecute the special motion are done in drafting, editing, filing, and arguing that motion. It's likely that at least part of the time doing preliminary tasks—such as drafting an answer (or as here, answers) and conducting at least some discovery—will be done with an eye toward preparing the special motion, and thus be reasonably necessary to prosecute it.

¶29 We acknowledge that this reading is arguably inconsistent with the holding of one other UPEPA state, Kentucky. In *Davenport Extreme Pools & Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 161 (Ky. Ct. App. 2024), the Kentucky Court of Appeals upheld a fee award under a uniform fee provision for all work performed in the case rather than merely for work tied to the special motion. *Id.* But *Davenport* is unpersuasive because the issue here was not squarely before the court: the losing party there did not detail what work was related to the motion and what was not, and the court simply affirmed without much analysis or reasoning, and without interpreting the statute. *Id.*

¶30 The Chronicle-Progress's preferred approach would have us functionally eliminate the words "related to the [special] motion" from the statute and replace them with "related to the *action*." We cannot do that. *See Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 12, 284 P.3d 600 ("Wherever possible, we give effect to every word of a statute, avoiding any interpretation which renders parts or words in a statute inoperative or superfluous." (cleaned up)). While it is true, as the Chronicle-Progress points out, that the legislature has charged us with broadly construing UPEPA, *see* UTAH CODE § 78B-25-111, broad construction rules are not license to re-write a statute. *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 4, ¶ 42, 417 P.3d 95 ("Although we may favor a broad construction of the implied

warranty, we cannot use public policy to rewrite an inconvenient statute."). Rather, construction rules of that ilk are most commonly tie-breakers in the event of an otherwise unresolvable ambiguity. *See, e.g., Jex v. Utah Lab. Comm'n*, 2013 UT 40, ¶¶ 52, 56, 306 P.3d 799; *Lane Myers Constr., LLC v. Nat'l City Bank*, 2014 UT 58, ¶¶ 25–27, 342 P.3d 749; *Elks Lodges No. 719 (Ogden) & No. 2021 (Moab) v. Dep't of Alcoholic Beverage Control*, 905 P.2d 1189, 1204 (Utah 1995). *But see Kearns-Tribune Corp. v. Salt Lake Cnty. Comm'n*, 2001 UT 55, ¶ 15, 28 P.3d 686 (construing Open and Public Meetings Act broadly in light of statement of legislative purpose without addressing ambiguity). And given text and context, we see no ambiguity here.

¶31 In sum on this point, district courts must award fees to UPEPA defendants who prevail on a special motion, but the award must be reasonably necessary to prosecute that motion. Some tasks will be obviously necessary to prosecuting the motion—such as researching, drafting, filing, and arguing the motion itself. Others will be obviously unnecessary to prosecute the motion—like here, getting a refund on an improperly paid jury fee. The harder questions will lie in the middle—tasks that involve double duty (such as reviewing the complaint with an eye toward both prosecuting the special motion and toward other unrelated tasks) or are mixed (such as preparing an answer, which may have parts reasonably necessary to prosecute the motion, and other parts not reasonably necessary). But the controlling question remains whether the task (or part of it) was reasonably necessary to prosecute the motion—if it was, it is awardable; if it was not, it is not.

II. WE REMAND FOR THE DISTRICT COURT TO EVALUATE IN THE FIRST INSTANCE (WITH SOME EXCEPTIONS) (1) WHICH FEES WERE REASONABLY NECESSARY TO PROSECUTE THE SPECIAL MOTION AND (2) WHAT AMOUNT IS REASONABLE

¶32 Aston has challenged the relatedness of certain fees and the overall reasonableness of the fees. We have explained for the first time here what the relatedness standard is. The question now is whether we should apply this standard in the first instance or remand for further proceedings. It is hypothetically possible for us to examine the record ourselves and apply that relatedness standard as well as determine reasonableness. But with two exceptions discussed below, we believe that the proper course is to remand for the district court to decide those issues. We do this for three reasons. First, it is not clear what standard the district court applied here, meaning that our review would essentially be for

correctness. This conflicts with the standard of review for attorney fees, which is for abuse of discretion. So long as a district court uses the proper legal standard, it has discretion to apply that standard to particular facts. *See R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119 (granting discretion for district courts to determine which party prevailed because it "depends, to a large measure, on the context of each case"). Remand will allow the district court to use the proper legal standard and properly exercise its discretion. Second, the relatedness determination will potentially impact the overall amount of the fee, which will bear on the reasonableness question—an issue on which district courts also enjoy broad discretion. *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). Third, remand allows the parties to present additional argument and possibly evidence in light of the standard we have articulated for the first time here.

¶33 On remand, the district court will address the parties' arguments about whether a given task was reasonably necessary to prosecute the special motion based on our reasoning and make related findings. But given how the appeal unfolded, it must exclude a portion of the fees stemming from redacted billing entries and a portion of the fees-on-fees.

*A. Aston Has Made a Prima Facie Showing to Exclude a Portion of the Redacted Billing Entries as Unrelated to the Prosecution of the Special Motion, so the District Court Must Exclude that Amount on Remand*

¶34 In his opening brief, Aston argued that because it was impossible to tell whether certain redacted entries were "related to" the motion, they should not be awardable. The Chronicle-Progress asserted in a footnote that the redactions were proper to protect confidentiality but did not address why those amounts should nevertheless be awardable. Failure to respond to an argument does not amount to an appellee confessing error, but it does lower the appellant's burden on appeal. *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76. To get reversal under that circumstance, "an appellant need only establish a *prima facie* showing of a plausible basis for reversal." *Id.* (cleaned up).

¶35 Aston has met his prima facie burden on this point. The Chronicle-Progress redacted part of seventy-nine entries in the original request, purportedly to protect attorney–client privilege. For many of the redacted portions, it is not possible to tell what the work related to. For others, it is possible to tell that the work

concerned the special motion, but the person communicated with or other important details are missing that could inform a reasonableness inquiry.

¶36 Aston challenges only those entries that, in his estimation, make it impossible to tell what the work related to. Aston's request is somewhat ambiguous on this point. At one point, he requests for "at least" twenty-six hours of work to be excluded; a couple of sentences later, he asks for twenty-six hours. By our math, he seeks exclusion of 26.4 hours, for a total of $15,329.50. Because potentially important details were redacted from the billing entries that could inform Aston's objections and the district court's reasonableness analysis, Aston has met his prima facie burden of showing a plausible basis for reversal on this issue, and we reverse the award of those fees.[12]

> B. *Aston Has also Made a Prima Facie Showing to Exclude a Portion of the Fees Incurred in Drafting and Arguing the Fee Motion as Unreasonable, so the District Court Must Exclude that Amount on Remand*

¶37 Aston challenged a portion of the fees incurred in drafting and arguing the fee motion as unreasonable in his opening brief. The Chronicle-Progress did not address that argument in response. As with the redaction issue, Aston must only show a prima facie case for reversal. He has shown that.

¶38 The Chronicle-Progress billed ninety-one hours—almost 80% of which for senior attorney time—to draft and argue the original fee motion. The bill for these fees-on-fees came to $46,941. Based on the time spent overall, the percentage of time billed by senior attorneys, and the sheer amount of fees, Aston has met his prima facie burden to show that amount was unreasonable. He suggests that twenty-three hours was a reasonable time to spend on the fee motion and related tasks. This is approximately 25% of the total hours spent on the fee motion. We thus exclude 75% of the original award for fees-on-fees, or $35,205.75.

---

[12] Because we exclude that amount from the calculation, it will not be at issue on remand. But we note that we have never directly addressed whether redacted portions of billing statements are awardable, or under what circumstances. Given the lack of adversarial briefing on this issue, we take no position on it.

*C. The District Court on Remand Should Address Both Parties' Remaining Arguments on Both Relatedness and Reasonableness*

¶39 Because the district court simply signed off on the Chronicle-Progress's request the first go-around, what it considered persuasive is not evident. But Aston has raised real concerns about the amount of overall hours spent, the percentage of senior attorney time devoted to tasks, and possibly duplicative work. There may well be good countervailing reasons (as the Chronicle-Progress argues) to award that contested work, such as the complexity of this area of the law, the newness of the statute, and the way that litigation unfolded. This can all be considered in light of the usual reasonableness factors. in *Dixie State Bank*, 764 P.2d at 990. But the district court should engage with these issues rather than simply signing off on a single-sided proposal.

## CONCLUSION

¶40 We reverse the district court's fee award, exclude the amounts discussed above, and remand for the district court to decide the remaining relatedness and reasonableness questions consistent with this opinion.[13]

_____

[13] The Chronicle-Progress requests attorney fees on appeal, but it did not prevail on appeal, so we do not award appellate fees.